PEOPLE *v.* SWARTZ.

1. CRIMINAL LAW—CHANGE OF VENUE—DENIAL.

The denial of a change of venue, asked because of alleged local prejudice, is no ground for a reversal of a conviction, where the jury was obtained without the respondent having exhausted his peremptory challenges, and there is no evidence that the jury were improperly influenced.

2. SAME—NEW TRIAL—STATUTORY LIMITATIONS.

Respondent, having been convicted at the May term of court, applied for a new trial, which was denied at the October term. In July following he made a motion for a rehearing of the application, on the ground of newly-discovered evidence. *Held,* that the motion was, in effect, for a new trial, and under 2 How. Stat. § 9576, authorizing the granting of new trials in criminal cases "at the same term" at which the trial is had, "or at the next term thereafter," came too late.

3. TRIAL—WITNESSES—ERROR CURED.

Error in sustaining an objection to a question is cured by subsequently permitting an answer.

4. HOMICIDE — EVIDENCE — DECLARATIONS OF ACCUSED — RELEVANCY.

Evidence on a trial for murder, that the accused, shortly after

the crime, voluntarily stated that, while attending a medical college, he had strapped a corpse to a buggy seat, after tying its hands and feet together, and had driven with it some distance, is admissible, where the prosecution claims that the condition of the deceased's body when found indicated that it had been so treated.

5. Criminal Law—Remarks of Prosecutor—Reporter's Minutes—Contradiction.

Statements by the prosecuting attorney in his argument, although improper as shown by the reporter's minutes, will not be so considered, where affidavits as to the exact language used, made by the attorney and several of the jurors, indicate an entirely proper statement,—especially where no objection was made to the language used until the reporter's minutes were written out.

6. Same.

Improper statements by the prosecuting attorney are not ground for reversal where the court peremptorily checked the attorney, and instructed the jury to disregard the improper remarks.

7. Same—Reasonable Doubt—Definition.

An instruction defining a reasonable doubt as a fair doubt, growing out of the testimony, based on reason and common sense, and not an imaginary, captious, or possible one, and as "such a doubt as may leave your minds, after a careful examination of all the evidence in the case, in that condition that you cannot say that you have an abiding conviction to a moral certainty, from the evidence in the case, of the truth of the charge," is not misleading.

8. Same—Requested Instructions—General Charge.

The action of the court in refusing to give certain instructions in the form requested by respondent, embodying instead, in the general charge, the substance of all that were material and proper, is to be commended, rather than condemned as error.

Error to St. Joseph; Yaple, J. Submitted June 16, 1898. Decided October 3, 1898.

Adelbert D. Swartz was convicted of murder in the first degree, and sentenced to imprisonment for life in the state prison at Jackson. Affirmed.

*H. P. Stewart* and *Howard, Roos & Howard,* for appellant.

*Fred A. Maynard,* Attorney General, and *George H. Arnold,* Prosecuting Attorney (*B. E. & L. F. Andrews,* of counsel), for the people.

Moore, J. On the morning of the 13th of October, 1894, the dead body of Willard N. Johnson, with four bullet holes in the heart, was found in the St. Joseph river, near the Farrand bridge, in the county of St. Joseph. The respondent is convicted of his murder, and has been sentenced to state's prison for life. He brings the case here by writ of error.

The record contains 75 assignments of error. It is not necessary to discuss many of them, though they have all had careful examination. Before the trial there was an application for a change of venue, upon the ground that respondent could not have a fair trial in St. Joseph county, because of the prejudice against him. Affidavits and counter affidavits were filed. The court denied the application. The record shows that a jury was obtained without serious difficulty, and before respondent had exhausted his peremptory challenges. After the respondent was convicted, a motion was made for a new trial, and it was then averred that the court erred in denying the application for a change of venue, and it was also said respondent did not have a fair trial, on account of the public feeling, which manifested itself during the trial both in and out of the court-room, and because of the argument made by the prosecuting attorney. The statements contained in this application were supported by some affidavits, and were denied by many counter affidavits. The court denied the application for a new trial, and found that there was no serious difficulty in getting a jury, and that there was no evidence that the jury were improperly influenced within or without the court-room. In his disposition of the petition, he found:

"Whenever recess or adjournment was taken, the peo-

ple in the court-room were required to remain in their places until the jury. had retired. While the jury were deliberating upon their verdict, officers of the court were stationed upon the ground outside of the court-house, to guard against any possible attempt on the part of any person to approach, influence, communicate, or interfere with the jury in any manner; and I find that the officers performed their duties faithfully, and that nothing transpired which could have prejudiced the respondent. There was no attempt during the progress of the trial, so far as I am able to ascertain, to intimidate or interfere with the witnesses for respondent. There was no manifestation of any such disposition in the court-room. The claim of counsel for respondent in this respect is not sustained. I find that the circumstances surrounding the trial support the integrity and purity of the verdict."

There is nothing in the showing made in this court which leads us to doubt the correctness of the conclusions of the trial court. There is no such showing as leads us to the conclusion that the court erred in refusing a change of venue. 4 Am. & Eng. Enc. Law, 818.

The case was tried at the May term of court, in 1895. The application for a new trial was denied at the October term of court. In July, 1896, a motion was made to have the application for a new trial reheard, upon the ground of newly-discovered evidence. Affidavits were filed in support of the motion, and counter affidavits were filed. The motion was overruled. This was practically an application for a new trial, made more than a year after the case was tried. The statute contemplates applications for a new trial shall be made speedily. 2 How. Stat. § 9576; *People* v. *Marble*, 38 Mich. 309; *Frazer* v. *Judge of Recorder's Court*, 112 Mich. 469. But, even should it be conceded this application was made in time, no such showing was made as to indicate a wrong use of the discretion vested in the trial court in refusing a new trial.

Many assignments of error relate to the admission of testimony. One of the expert witnesses was asked, if a man having received wounds through the right side of his heart had hold of a rod or something with the left hand

to steady himself, would it have a tendency to keep the body in an upright position longer than if he had not? An objection was made to the question, which objection was sustained. Counsel were afterwards told they might take an answer to the question. They now assign error. We do not deem it necessary to discuss the matter further than to say, if error was committed in sustaining the objection, it was afterwards cured by permitting an answer to the question. *Stanton* v. *Estey Manfg. Co.,* 90 Mich. 12.

Some testimony was permitted to be given, when counsel for respondent objected that it was immaterial, which testimony was afterwards stricken out by the court. It is now urged that, as the court struck out the testimony, it must have been immaterial or incompetent, and, having been allowed to go to the jury, it worked prejudice to the respondent. Except as we shall discuss the testimony more in detail, it may be said of this testimony it was not of a character that could do any harm to the respondent, and might well have been left in the case. It was evidently stricken out of the case by the trial judge because of a desire to leave nothing in the case which could be possibly prejudicial to the respondent. When the court struck out this testimony, he cautioned the jury they must not consider it at all.

After the body was found, a coroner's inquest was held. The respondent was present, and talked a good deal about Mr. Johnson, and the manner of his killing, and about offering a reward for the murderers, and about his relations with Mr. Johnson. Witnesses were asked about this conversation, and related it in detail. A witness was allowed to state as follows:

"We were talking about folks feeling timid around where corpses were. He said they didn't affect him. Of course, he was a little bit affected being around Johnson's, the way he was killed. He said he had been in a room, and moved around and hit them, when he was alone. He told about going out about 12 miles. He said an old

man had been turned over to the school, and he said they went out, and got him, and took and tied his hands together and his feet together, and set him up in a buggy strapped to the seat, and they put a hat on his head, and everybody they met thought he was a living man sitting in there. Dell Swartz is studying for a physician. He showed us a letter that he got from the professor of the college, but I don't remember where."

It is said this was a serious error. It was the theory of the people that respondent had lived with the deceased, who was his brother-in-law, for some time; that shortly before the murder, in the absence of Mr. Johnson, his wife, who was an invalid and a sister of the respondent, took their little girl, and, with the respondent, left her husband's house, and went to live with her father, 20 miles or more from the home of Mr. Johnson. It is claimed Mr. Johnson went to see his wife, and, when he arrived at her father's, the farm bell was rung for the respondent, before Mrs. Johnson would see her husband. It is said Mr. Johnson was not allowed to see his little girl; that there was ill feeling between the respondent and Mr. Johnson; that, after Johnson left the home of respondent's father, he stopped at the house of Mr. Tunison; that the respondent, assisted by some one else, waited for him near a piece of woods, when Mr. Johnson was shot dead; that his body, horse, and cart were taken to the woods until people were not likely to frequent the roads, when his body, seated in a buggy, was conveyed several miles, to the Farrand bridge, where it was thrown into the river, and a number of shots fired upon the bridge, and that at the same time a revolver was thrown into the river, for the purpose of conveying the impression that Mr. Johnson had committed suicide. It is the claim of the people that *rigor mortis* had set in when the body was thrown into the river; that the legs were drawn up, and in the position they would be if the body had stiffened while seated in the seat of a buggy, strapped to the back of the seat; that the arms were also rigid, and partly drawn back, one of the hands being

nearly as high as the head. It is claimed, after the body was thrown into the river, the respondent and another man took the horse and cart belonging to Mr. Johnson to the home of Mr. Johnson, a number of miles away, leaving them in the barnyard, there being in the cart Mr. Johnson's hat, overcoat, and rubber coat; that the inmates of the house were awakened by the horse. It is claimed that, after the horse and cart were left at Mr. Johnson's, the respondent returned to his home. It is the claim of the people that the respondent drove a gray horse belonging to Dr. Peas, and arrived home very early in the morning. The people gave testimony tending to support their theory of the case. The respondent denied having any knowledge of what occurred to Mr. Johnson after he left the house of Mr. Swartz; and it was the theory of the defense that Mr. Johnson had committed suicide, but that, if he was murdered, it was done without the knowledge of the respondent, and by some one else. Testimony was given showing respondent did not leave his father's house that night. In view of the theory of the people and the testimony in support of it, the testimony in relation to the finding of the body, its position in the stream, the heels dragging on the bed of the stream, the body being partially erect, the head and hands nearly out of the water, the rigid condition of the legs and arms, the fact that this conversation occurred soon after the tragedy, that it was a voluntary talk in connection with the circumstances attending the death of Mr. Johnson, we think it was relevant evidence, and it was for the jury to decide what effect should be given it in connection with all other testimony. Bradner, Ev. (2d Ed.) 5, 6.

We do not deem it necessary to discuss the other assignments of error in relation to the admission of testimony.

Exceptions were taken to the argument of the prosecuting attorney. It is said he misstated the testimony to the jury. As to some of the instances cited by counsel, an inspection of the record shows the statements were fully justified by the evidence. In another instance there was

a disagreement between counsel as to what the record contained, and the court caused the stenographer's minutes to be read to the jury. The judge cautioned the jury against relying upon anything except the testimony in relation to questions of fact.

It is claimed the prosecuting attorney expressed his opinion of the respondent in such a way as to prejudice the jury, and to bring the case within *People* v. *Montague,* 71 Mich. 447; *People* v. *Evans,* 72 Mich. 367; *People* v. *Lange,* 90 Mich. 454; *People* v. *Kahler,* 93 Mich. 625. The prosecuting attorney was commenting upon the testimony of a witness, and it is claimed used the following language: "That is either true or false, and, if it is false, John Derhammer is no better than the man we are trying here today." The attention of the court was not called to this language until the motion for a new trial was made. The reporter's minutes show the language as quoted. The prosecuting attorney and 11 of the jurors made affidavit that the language quoted was not all that was said, but the words "if he is guilty" were used by the prosecuting attorney. The circuit judge, in disposing of the question, finds that the arrangements of the court-room and the relative position of the parties will readily account for the failure to correctly report the remarks of counsel. The fact that no objection was made until the minutes of the reporter were written out is strongly corroborative of the accuracy of the recollection of the prosecuting attorney and the jurors.

Complaint is made of the use made by the prosecuting attorney of the case of *Com.* v. *Webster,* 5 Cush. (Mass.) 295 ( 52 Am. Dec. 711); *Id.* 386. The record shows that the counsel for respondent called the attention of the jury to this case, and used it in behalf of his client; and that the prosecuting officer was replying to his argument. As soon as the objection was made to the argument, the court stopped it, and told the jury in very explicit terms that they must not be influenced by the statement of counsel in regard to the *Webster Case.* If what

was said by the counsel was improper,—and, in view of the way the question came up, I am not prepared to say it was,—the court at once prevented any mischief being done by instructing the jury not to regard the remarks made. The zeal of counsel in an important and closely contested criminal case is apt to lead them to extreme expressions; but where the court directs and controls the trial, and promptly checks the attorney when he attempts to go further than his duty calls him, and properly instructs the jury to disregard the improper remarks, the verdict should not be set aside because, before this is done, an improper sentence has dropped from the lips of counsel. *People* v. *Hess*, 85 Mich. 128; *People* v. *Pope*, 108 Mich. 361.

Exception is taken to the instruction of the court as to what constitutes a reasonable doubt. Counsel say:

"The difficulty grows out of the fact that the term 'reasonable doubt' is exceedingly difficult to define, except in a negative way. There is no better positive definition than the expression itself, and when you commence to explain to a jury what a reasonable doubt is, and what constitutes a reasonable doubt, and what does not constitute a reasonable doubt, you are liable to leave in their minds a 'reasonable doubt' as to what a reasonable doubt is."

The charge of the court upon that subject is as follows:

" A reasonable doubt, gentlemen, is a fair doubt, growing out of the testimony of the case. It is not a mere imaginary, captious, or possible doubt. There are very few things in this world outside of mathematics, gentlemen, that are capable of demonstration. But it is a fair doubt, based upon reason and common sense. It is such a doubt as may leave your minds, after a careful examination of all the evidence in the case, in that condition that you cannot say that you have an abiding conviction to a moral certainty, from the evidence in the case, of the truth of the charge here made against the respondent. Now, apply this rule to this case and to this respondent. If you should become satisfied from the evidence that he is guilty of murder, so that you can say: 'There may be a

possible doubt, but there is no reasonable doubt; I am morally satisfied and certain from the evidence in the case that the respondent is guilty,'—then you should say so by your verdict."

This charge is in entire harmony with the decisions of this court. *People* v. *Finley,* 38 Mich. 482; *McGuire* v. *People,* 44 Mich. 286 ( 38 Am. Rep. 265 ); *People* v. *Cox,* 70 Mich. 257; *People* v. *Flynn,* 96 Mich. 276.

Error is assigned because the court refused to give certain of the requests to charge presented by counsel for respondent. Instead of reading these requests, the court gave the substance of all of them which were material and proper to be given, in a general charge of exceptional clearness and fairness, in which all of the rights of the respondent were carefully guarded. Such a course, instead of being error, is to be commended. *Fraser* v. *Jennison,* 42 Mich. 206; *Keables* v. *Christie,* 47 Mich. 594; *People* v. *Sligh,* 48 Mich. 54; *Miller* v. *Sharp,* 65 Mich. 21.

The court was asked to charge the jury that the evidence in the case was not sufficient to warrant a conviction. A long and able argument is made to convince us that this request ought to have been given. We have already sufficiently alluded to the different theories held by the people and by the respondent. If the jury believed the testimony offered by the people, in connection with the circumstances presented, it was not an unfair inference from all the proofs offered by the people that Mr. Johnson was murdered, and by the respondent. On the other hand, if the testimony offered on the part of the respondent is believed, he should have been acquitted. The case was a proper one to submit to the jury.

We discover no error in the case. The judgment is affirmed.

The other Justices concurred.