### PEOPLE *v.* CUTLER.

1. Criminal Law—Jurors—Voir Dire Examination—Presumption of Innocence.

   In a criminal prosecution for murder a question put to a juror on his *voir dire* as to whether he would consider the presumption of innocence as evidence in favor of the accused, was properly sustained.

2. Same — Murder — Evidence — Question for Jury — Instructions.

   It was proper to submit first and second degree murder for the consideration of the jury, where the evidence tended to show previous threats by the accused to shoot deceased and that the shooting was not in the house of accused, as claimed by her, but in the public highway.

3. Same.—Examination of Witnesses—Discretion of Court.

   The preliminary examination of witnesses by the court to determine the admissibility of the declarations of a deceased party as dying declarations may be conducted by the court itself or by the prosecuting attorney in the court's presence, and it lies within the discretion of the court as to conducting such examination in the presence of the jury.

4. Same—Murder—Defenses—Evidence—Competency.

   The plea of self-defense having been filed, the testimony of several witnesses in rebuttal on behalf of the people that deceased had stated to them that his wife was immoral, that she seemed to have an anxiety for other men, that she was not living right, and was unfaithful to her marriage vows, was incompetent.

5. Same—Evidence—Admissibility—Harmless Error.

   The admission of incompetent testimony in rebuttal by the people was harmless error where such testimony tended to support the plea of self-defense.

6. Same.

   Where accused had testified to certain previous assaults by her husband upon her, the exclusion of the testimony of certain witnesses as to her appearance following such assaults, on the ground of lack of personal knowledge of

the assaults, was harmless error, the witnesses subsequently describing her appearance.

7. SAME — EVIDENCE — CROSS-EXAMINATION OF WITNESSES — IMPEACHMENT.

It is permissible, within the discretion of the court, to discredit a witness, upon cross-examination, by showing the witness' want of chastity.

8. SAME—INSTRUCTIONS—REQUESTS TO CHARGE—WEIGHT OF EVIDENCE.

Where the general charge was to the effect that the jury should give such weight to the testimony of accused as in view of all the facts and circumstances as shown it should appear to them to be entitled to and should test such testimony the same as that of any other witness, the refusal to comply with a request to add that such testimony "if rational, natural and consistent may outweigh the testimony of all other witnesses," was not erroneous, the general charge having fairly covered the request and fully protected the accused, since a trial court is not required to give a request in the exact language tendered.

9. SAME.

Where a plea of self-defense was interposed in a prosecution for murder, and evidence introduced in support of such plea, a charge that "if the person assailed honestly believes his or her life in danger or that he may suffer or that she may suffer serious bodily harm, he has a right to resist even to the taking of the life of his assailant. The person assailed is to be judged by the circumstances and conditions as they honestly appear to her at the time," and a charge that "if you find from the evidence that the defendant had reasonable cause to believe that the deceased was about to strike her with a knife in the vestibule of the house at the time and in the manner described by her, she was not bound to flee, but had a right to defend herself from such threatened attack," fairly safeguarded the rights of the accused.

10. TRIAL—INSTRUCTIONS—APPEAL AND ERROR.

Where the court referred by name to certain witnesses in its charge, but did not comment upon their testimony, except to indicate that they were witnesses for the people, and concluded the charge with an admonition that the verdict should be based entirely upon the evidence actually produced before the jury and not upon the statements of

attorneys or the court as to the testimony, any undue impression from such reference was cured by such admonition.

Error to Berrien; Bridgman, J. Submitted June 15, 1916. (Docket No. 126.) Decided June 27, 1917.

Carrie May Cutler was convicted of murder in the second degree, and sentenced to imprisonment for not less than two nor more than twenty years in the Detroit house of correction. Affirmed.

*John J. Sterling* and *Harry A. Plummer*, for appellant.

*Grant Fellows*, Attorney General, *L. W. Carr*, Assistant Attorney General, *Chester P. O'Hara*, Prosecuting Attorney, and *James O'Hara*, Assistant Prosecuting Attorney, for the people.

BIRD, J. Respondent shot and killed her husband in Benton Harbor on April 30, 1915. She was afterwards convicted of murder in the second degree, and sentenced to the Detroit house of correction for a term of not less than 2 nor more than 20 years. She has brought the proceedings to this court by writ of error for review.

The record discloses that in June, 1914, respondent was married to John Cutler in Benton Harbor, where they both resided. At that time she was 31 years of age, and had been twice married. Cutler was 44 years of age, and had been previously married. They lived together until February, 1915, when they separated and respondent went to work as a domestic. She claims that during the time they lived together they had frequent quarrels; that he was cruel to her, and that on two occasions she left him temporarily on account of harsh treatment; that after they separated he assaulted her several times on the streets of Benton

Harbor, and beat her and threatened to take her life; that about the middle of April, 1915, she went to work in the home of Mr. M. N. Berger, who resided about a mile from the business center of Benton Harbor. It appears that on the afternoon of April 30th Cutler called the Berger home by telephone, and learned that respondent was there, and that the Bergers were away. He at once went to the Berger home, and respondent claims that he struck her in the face and threatened to kill her with a knife which he had in his hand; that when she recovered from the blow she went to her employer's bedroom and secured a revolver and returned to the front door. Cutler was then standing just outside of the screen door, and her claim is that he still had the knife in his hand, and that his attitude was a threatening one, whereupon she shot him in self-defense. It was claimed by the prosecution that Cutler went to the Berger home in the afternoon in question to induce his wife to return and live with him; that Cutler was not angry, and did not threaten her; that respondent was the angry one; and that she did what she had threatened to do on former occasions, if he did not stop following her.

1. Respondent's counsel inquired of a juror on his *voir dire* if he would consider the presumption of innocence as evidence in favor of the accused. The question was objected to, and a discussion followed between court and counsel as to whether the presumption of innocence should be regarded as evidence in the case in favor of the accused. At the close of the discussion the court sustained the objection and stated to the jury that:

"The respondent here starts with the presumption of innocence, and that presumption of innocence will continue with her until such time as the jury are satisfied beyond all reasonable doubt of her guilt."

This assignment of error raises a question which

has been the subject of much discussion and disagreement among the courts and law-writers. It is stated by Greenleaf on Evidence that "this legal presumption of innocence is to be regarded by the jury, in every case, as matter of evidence, to the benefit of which the party is entitled." 1 Greenleaf on Evidence, § 34. This theory is attacked as unsound by Thayer's Preliminary Treatise on Evidence, p. 551; also by Wigmore in his work on Evidence (volume 4, § 2511). Wharton on Criminal Evidence also declares against the evidence doctrine (volume 2, pp. 1817, 1818). In *Coffin* v. *United States*, 156 U. S. 460 (15 Sup. Ct. 394), the Federal Supreme Court declared in favor of the rule as laid down by Greenleaf, but in a later case it appears to have receded in part from its position in that case. *Agnew* v. *United States*, 165 U. S. 36 (17 Sup. Ct. 235). In the State courts some of them have declared in favor of the evidence doctrine, while others have declared against it. It does not seem necessary to determine that question in this case. Whether the legal presumption of innocence is to be regarded by the jury as evidence in favor of the accused, or whether it is to be regarded merely as fixing the status of the accused before the court is not a matter of much concern in this case. Such a discussion is very much out of place with a jury of laymen. To ask a layman to draw fine legal distinctions about which the profession and courts are unable to agree is not only without profit, but is absurd. Counsel insisted upon asking a very common question in a technical and perplexing way. The trial court indicated clearly that he would be permitted to ask the question in the usual way, namely, whether the juror understood that the accused was entitled to the presumption, and whether he would give her the benefit of it. The juror to whom the question was put made answer that he understood that the accused was entitled to the pre-

sumption. Whether she was entitled to the benefit of the presumption on one theory or the other was of no importance to the juror. The ruling of the court was proper. For a valuable review of the authorities on this question, see *Culpepper* v. *State,* 4 Okl. Cr. 103 (111 Pac. 679, 31 L. R. A. [N. S.] 1166, 140 Am. St. Rep. 668).

2. Error is predicated upon the refusal of the court to eliminate first and second degree murder from the consideration of the jury. If the court were to assume that the circumstances attending the shooting were as claimed by the defendant, this contention would have some force. But the prosecution claimed that the shooting took place under very different circumstances than those detailed by the respondent. While respondent claimed that she shot her husband when he was on the porch or in the vestibule, the people's proof tended to establish the shooting on the viaduct in the public highway some distance from the house. This, coupled with the proof of her previous threats to shoot her husband if he did not quit following her, was sufficient to submit to the jury upon the question of her act being deliberate, wilful, and premeditated.

3. Officer Foeltzer and Dr. Ryno were the first to arrive on the scene after the shooting. They found Cutler on the viaduct in a dying condition, and they removed him to the hospital, where he died a few hours later. On the way there Cutler made a statement concerning the shooting, which was admitted on the trial as his dying declaration. Error is assigned on its admission on the ground that the trial court should have personally conducted a preliminary examination of the witnesses out of the hearing of the jury to ascertain whether it was admissible as a dying declaration. Counsel cite the recent case of *People* v. *Christmas,* 181 Mich. 634 (148 N. W. 369), in support of this contention. In that case it was stated:

"It is elementary that before a statement made by the deceased should be received as his dying declaration, a preliminary investigation shall be made by the court to determine its admissibility as such."

We think counsel is mistaken in assuming that this language was intended to establish such a rule as he contends for. It is the duty of the court to determine by preliminary examination of the witnesses whether the declarations were made *in extremis*, and whether the deceased so understood it, but it is of little importance whether the court conducts the examination himself or whether the prosecuting attorney conducts it in his presence. The trial court in reply to counsel's objection observed that if the inquiries of the prosecuting attorney did not satisfy his mind, he would interrogate the witnesses himself. The preliminary examination was conducted in his presence, and he determined that the statement was admissible, and the fact that the examination was conducted in the presence of the jury did not make it error. Whether the examination should proceed in the presence of the jury was discretionary with the trial court.

4. On rebuttal the prosecutor was permitted to show by several witnesses that the deceased stated to them that the respondent, his wife, was immoral; that she seemed to have an anxiety for other men; that she was not living right; and that she was unfaithful to her marriage vows. It is said this testimony was hearsay and therefore objectionable. We have much doubt about the competency of this testimony on behalf of the people. In admitting it the trial court took the view that it had a tendency to show the state of Cutler's mind. Conceding that it did, when that was established no inference could be drawn therefrom which would tend to refute the claim of self-defense. It would operate to show a state of mind which might cause him to do just the things that defendant claimed

that he did. While we think the testimony was incompetent, it tended to strengthen the theory of respondent, and tended to show, as her testimony did, that Cutler was of the belief that she was running with other men. We think the error was harmless. *Whittemore* v. *Walter*, 193 Mich. 365 (159 N. W. 525).

5. Three of respondent's witnesses were asked upon direct examination to describe respondent's physical appearance following the occasions when she claims she had been assaulted by her husband. The answers appear to have been excluded upon the ground that the witnesses had no personal knowledge of the assaults or who made them. Respondent had, however, previous to this, testified to the assaults having been made upon her, and she was entitled to the testimony of the witnesses as to her physical appearance following them. The witnesses saw her appearance, and it was competent for them to describe it. It does not appear that any injury resulted by the exclusion of the answers, as each one of the witnesses afterward described her appearance.

6. Assignments 16, 17, and 18 relate to the questions propounded to respondent upon cross-examination affecting her chastity. It is insisted that it was error to permit them to be answered over counsel's objection, under the rule laid down in *People* v. *Cahoon,* 88 Mich. 456 (50 N. W. 384) ; *People* v. *Gotshall,* 123 Mich. 474 (82 N. W. 274) ; *People* v. *O'Hare,* 124 Mich. 515 (83 N. W. 279). The first two cases cited are not in point. In *People* v. *O'Hare* the prosecuting attorney interrogated the witness with questions affecting her chastity, and upon their being answered in the negative he was then allowed to show affirmatively by other witnesses that her answers were untrue. This is not permissible, but it is permissible within the discretion of the court to discredit a witness upon cross-examination by showing a want of chastity. Some

doubt was cast upon.this rule in *People* v. *Mills*, 94 Mich. 630 (54 N. W. 488), but the authorities there cited by Mr. Justice MCGRATH do not support that view. Mr. Justice MONTGOMERY'S observations on this holding in *Knickerbocker* v. *Worthing*, 138 Mich. 224 (101 N, W. 540), are in accord with the general rule. The late case of *Lunde* v. *Railway*, 177 Mich. 374 (143 N. W. 45), very clearly points out the distinction. It was there said:

"There is a clear distinction between attempting to impeach a witness by showing a want of chastity and a cross-examination for that purpose."

The general rule has been stated as follows:

"That on cross-examination a witness may, for the purpose of impeachment, be asked and compelled to answer as to particular traits of character, or as to particular facts, or whether he has committed particular wrongful or immoral acts, subject always, of course, to his personal privilege and right to refuse to answer incriminating questions, even though such facts or acts may be irrelevant and collateral to the principal controversy or issues involved in the case. So he may be asked whether he has committed certain crimes, whether he ran a saloon without a license in violation of law, whether he has been criminally intimate with a certain person, or whether he swore falsely on a certain occasion, or interrogated as to his occupation or vocation, habits, or associates; and a female witness may be asked whether she is a prostitute, is living in adultery, or is or has been the kept mistress of a particular man, or has had illegitimate children, or has kept girls for the purpose of prostitution." 40 Cyc. p. 2616, and cases.

While this rule is denied in some jurisdictions it appears to be the rule in this State subject always to the proper discretion of the trial judge. *Wilbur* v. *Flood*, 16 Mich. 40 (93 Am. Dec. 203) ; *Threadgool* v. *Litogot*, 22 Mich. 271; *Beebe* v. *Knapp*, 28 Mich. 53; *Bissell* v. *Starr*, 32 Mich. 297; *People* v. *Whitson*, 43 Mich. 419

(5 N. W. 454) ; *Driscoll* v. *People,* 47 Mich. 413 (11 N. W. 221) ; *Leland* v. *Kauth,* 47 Mich. 508 (11 N. W. 292) ; *McBride* v. *Wallace,* 62 Mich. 451 (29 N. W. 75) ; *People* v. *Harrison,* 93 Mich. 594 (53 N. W. 725) ; *People* v. *Mulvaney,* 171 Mich. 272 (137 N. W. 155) ; *Totten* v. *Totten,* 172 Mich. 565 (138 N. W. 257) ; *Lunde* v. *Railway,* 177 Mich. 374 (143 N. W. 45).

In several of the foregoing authorities the precise question was raised, namely, the competency of questions asked a female witness affecting her chastity, and such cross-examination was held proper, subject, however, to the discretion of the trial court. As the questions in the instant case appear to have been asked in good faith, we think the trial court did not abuse his discretion in allowing them to be answered.

7. The following request to charge was tendered:

"The defendant, under our statute, is allowed to testify under oath in her own behalf, and it is the duty of the jurors, where she has done so, to give her testimony such weight as in view of all the facts and circumstances as shown it shall appear to them entitled to. Her testimony is to be tested the same as that of any other witnesses. *If rational, natural and consistent, it may outweigh the testimony of all other witnesses.*"

This request was given, save that portion in italics. The general charge fairly covered the request, and fully protected respondent's rights in that connection. This court has repeatedly held that the trial court is not bound to give a request in the precise language tendered. *Miller* v. *Sharp,* 65 Mich. 21 (31 N. W. 608) ; *People* v. *Swartz,* 118 Mich. 292 (76 N. W. 491) ; *People* v. *Quimby,* 134 Mich. 625 (96 N. W. 1061) ; *People* v. *Hammond,* 177 Mich. 416 (143 N. W. 244).

In the *McArron Case* cited (121 Mich. 1, 40 [79 N. W. 944]) a similar request was made and refused by

the court, and it was held error, but a reference to that case will disclose that the request was refused and not covered by the general charge.

8. Counsel has this to say about requests 22, 27, 28, and 30:

"It was unnecessary under the law for the respondent's apprehended danger to be real or actual before resisting to protect herself from it. Each of these instructions requested the court to charge that if she, in good faith, believed the threatened danger to her life or limb to be real or actual, she was justified in resisting even to the taking of life to protect herself from it. * * * If she was assailed in the manner described by her, she had an absolute right to shoot deceased. The law does not require that she should 'draw very fine distinctions concerning the extent of injury that an infuriated and reckless assailant may probably inflict.' * * * We insist that the foregoing instructions should each have been granted, and it was reversible error to refuse them, especially when the court wholly ignored the subject in his voluntary charge to the jury."

In covering these requests in his general charge the trial judge instructed the jury in part that:

"If, however, the person assailed honestly believes his or her life in danger or that he may suffer, or she may suffer, serious bodily harm, he has a right to resist, even to the taking the life of his assailant. The person assailed is to be judged by the circumstances and conditions as they honestly appear to her at the time."

He further instructed them that:

"If you find from the evidence that the defendant had reasonable cause to believe that the deceased was about to strike her with a knife in the vestibule of the house, at the time and in the manner described by her, she was not bound to flee, but had a right to defend herself from such threatened attack."

These portions of the charge fairly safeguarded the rights of the respondent upon that phase of the case.

In view of these instructions, the charge which counsel makes in his brief that the subject-matter of the requests was entirely ignored by the trial court in his charge does not appear to be justified by the record.

9. The trial court said to the jury in the course of its charge that:

"On the other hand, the people insist that Mr. Cutler was not killed at the time, the place, and under the circumstances stated by respondent herself, and offer the testimony of Miss Schaub, Mrs. Sonnenberg, the two girls or ladies, the two street car men, Osborn and Haney, and also the testimony of one Kingsland, which they insist, if you believe these witnesses, that the facts testified by them are inconsistent with any theory or facts of self-defense shown in this case."

Counsel complains of these references to the people's witnesses, and says that the trial court "singled out each of the witnesses by name and impressed their testimony upon the jury." Reference to the language of the court will show that while he referred by name to some of the witnesses on behalf of the people, he made no comment upon their testimony any further than to indicate that they gave testimony on behalf of the people, a fact which the jury already knew. Immediately following the language complained of the court said:

"But, gentlemen, you are not to take the testimony as final as stated by either of the attorneys for the defense or for the people, or even from the court, but you will recollect the evidence for yourselves, and in arriving at a verdict you will take into consideration the testimony of all the witnesses, and every fact and circumstance shown by the evidence. But your verdict, gentlemen, should be based upon—entirely upon—the evidence in this case, and upon nothing else but just such evidence as has been actually produced before you and in your hearing."

If the jury were unduly impressed by reason of the

instruction, this admonition was sufficient to dispel it.

10. Complaint is made of the argument of the prosecuting attorney to the jury. In some instances objection was made, but no ruling was made nor requested. In other instances the court ruled with respondent's counsel, and cautioned the jury against the effects of the objectionable remarks. In two instances objection and exception were taken to remarks made to opposing counsel, which probably had some significance with them, but whether they had any force with the jury we are unable to decide, as the record does not show what significance, if any, they had. Nothing appears upon their face to indicate that they were injurious to respondent. As is usual in such cases, there was much earnestness and zeal manifested by counsel, and many exchanges were made between them which were uncalled for, but we think there was nothing which injuriously affected respondent's rights.

We have examined the other errors assigned, but find nothing in them which calls for a reversal of the case. The judgment of conviction is affirmed.

KUHN, C. J., and STONE, MOORE, STEERE, and BROOKE, JJ., concurred with BIRD, J. OSTRANDER, J., concurred in the result. PERSON, J., did not sit.