STATE OF NORTH DAKOTA, Respondent, v. ALEX LIBER-MAN, Appellant.

(229 N. W. 363.)

Opinion filed February 18, 1930.

*James Morris,* Attorney General, *Chas. H. Houska,* State's Attorney, and *Lloyd B. Stevens,* for respondent.

*F. T. Cuthbert* and *J. J. Kehoe,* for appellant.

BURR, J.  The defendant was charged with "keeping intoxicating liquor for sale as a beverage" and convicted.  He appeals from the order denying him a new trial, and sets forth 33 specifications of error.  These may be arranged in three classes dealing with: The admission of testimony; the charge to the jury; and the sufficiency of the evidence.

The alleged errors in the first class concern the time stated in the information.  The information says, among other things, "that between the 24th day of August, 1928, and the 30th day of August, 1928, inclusive, at and in the county of Towner . . . one Alex Liberman . . . did then and there wilfully and unlawfully keep intoxicating liquor for sale as a beverage, etc."  Appellant claims the court erred in permitting testimony regarding transactions had on the 24th day of August 1928, because such day should not be included.

There was no error in this.  Under our statute, Section 10691 of the Compiled Laws, "the words used in an information . . . must be construed in their usual acceptation in common language, except words and phrases defined by law . . . ."  Ordinarily the word "between" excludes the termini.  Weir v. Thomas, 44 Neb. 507, 48 Am. St. Rep. 741, 62 N. W. 871.  There are times however when the word includes both dates.  McGinley v. Laycock, 94 Wis. 205, 68 N. W. 872.  It depends largely upon the plain meaning and sense.  As said in Kendall v. Kingsley, 120 Mass. 94, 95, construing an assignment of rents, "the preposition 'until,' like 'from' or 'between,' generally excludes the date to which it relates" yet "general rules of construction must yield to the intention of the parties, apparent upon the face of the whole instrument."  In the case at bar we must consider the word "inclusive" in construing "between," for it is said it was between these dates "inclusive."  Webster says: "inclusive" means: "Comprehending the stated limit or extremes, as from Monday to Friday inclusive, that is taking in both Monday and Friday . . . opposed to exclusive."  The Standard Dictionary says: "including the things, times, places, limits, or extremes mentioned."  Had the information said "from August 24 to August

30 inclusive" both extremes would be included. Using the word "be-, tween" instead of "from," makes no difference. It was not necessary to say "both inclusive" to include both limits. It adds nothing to the meaning. Brooklyn Trust Co. v. Hebron, 51 Conn. 22, was a case where the validity of the notice of a town meeting was in question. The law required the notice to be posted "five days inclusive before the meeting is held." Notice was posted September 26th and the meeting held September 30th. The word "inclusive" was held to include the first day and exclude the last. In Monroe v. Acworth, 41 N. H. 199, 201, there was involved notice of sums expended for paupers "since the 5th of October, 1858, and up to December 31, inclusive." The court held the term "inclusive" included the last day and excluded the first. The information says: "Between the 24th day of August and the 30th day of August inclusive," which, under ordinary construction, includes both limits in harmony with the definition given by lexicographers.

Objections were made to rulings on introduction of testimony, such as: That the question was "leading and suggestive"; that the court failed to strike out testimony as being a conclusion; and immaterial; and that the witness was not qualified to tell whether the liquor smelled like alcohol. We have examined these rulings and find no reversible error.

The charge is said to have six errors. Four relate to the time the court charging that the jury could take into consideration any sale proved to have been made on the 24th day of August. There was no error in these instructions.

The court defined "reasonable doubt" and said: "What is meant by that term 'reasonable doubt'?" "Well, just what those words in themselves imply—a doubt that is reasonable, a doubt that you have some foundation in common sense for having in your minds." Appellant says: "There is no justification in law for the instruction that a reasonable doubt is one with some foundation in common sense," and that there should have been "another instruction to find out what common sense is."

The term, "reasonable doubt," needs no definition. It means what it says. State v. Morrison, 67 Kan. 144, 72 Pac. 559; State v. Wilcox, 132 N. C. 1120, 44 S. E. 631; People v. Cox, 70 Mich. 247, 38 N. W. 240; Lipscomb v. State, 75 Miss. 559, 23 So. 212; Barney v. State, 49

Neb. 515, 68 N. W. 639; Lenert v. State, — Tex. Crim. Rep. —, 63 S. W. 565. As said in Miles v. United States, 103 U. S. 304, 312, 26 L. ed. 481, 484, "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury."

A doubt demanding an acquittal must be a reasonable doubt. A possible or speculative doubt is not sufficient. State v. May, 172 Mo. 630, 72 S. W. 924; McKleroy v. State, 77 Ala. 95, 97. It is not "a mere imaginary, captious, or possible doubt, but a fair doubt, based upon reason and common sense, and growing out of the testimony in the case." State v. McCune, 16 Utah, 170, 51 Pac. 819. See also People v. Swartz, 118 Mich. 292, 76 N. W. 491; Emery v. State, 101 Wis. 627, 78 N. W. 152. Nor is it a feeling that a conclusion may possibly be erroneous. See State v. Roberts, 15 Or. 187, 13 Pac. 900. The court told the jury the defendant had to be convinced upon the evidence introduced, and "if you can reasonably account for any facts in this case upon a theory or hypothesis that will admit of the defendant's innocence it is your duty under the law to do so. If you have a reasonable doubt of his guilt you should acquit him." No reversible error is shown in this.

Appellant says "in no place in its instruction did the court state to the jury that the intoxicating liquor kept must have been kept for sale as a beverage." In the charge it is stated that among the material allegations of the information is that "said Alex Liberman—did wilfully and unlawfully keep intoxicating liquors for sale as a beverage." Again the court said "It is the claim of the state that the defendant was keeping for sale as a beverage in this county and state alcohol."

Further the court said "I charge you that before you can find the defendant guilty of the crime charged, you must first find from the evidence beyond a reasonable doubt that the defendant did keep intoxicating liquors for sale as a beverage at some time during the period between and including those dates." Another portion of the charge overlooked by appellant is the statement by the court "You must be satisfied beyond a reasonable doubt from the evidence in the case that the contents of such can were intoxicating liquors and that the defendant kept the same for sale as a beverage at some time between and including the 24th and 30th of August, 1928."

It is said the court erred in instructing the jury that "For your evi-

dence, for your facts, you must get those from the witnesses as they have testified before you upon the witness stand and from the exhibits that have been offered and received in evidence." It is the claim of the appellant the exhibits were improperly admitted. There is no question but what the instruction was correct if the exhibits were admitted properly. That it was proper to admit them will be evident from a résumé of the evidence, when dealing with its sufficiency.

It is said the evidence is insufficient to justify the verdict. The defendant was charged with keeping intoxicating liquors for sale as a beverage. He was not charged with making sales. The evidence shows the defendant was conducting a pool room in Rock Lake, that on the 25th of August, 1928, a young man by the name of Oakland, a minor, called on the defendant, to see if he could get some alcohol, and the defendant told him "yes." Each drove out of Rock Lake about two miles northwest and the defendant delivered a can of alcohol to him. Back in Rock Lake O. paid him for the alcohol. It seems the alcohol was "planted" along the road. As the witness said "We pulled a gallon of alcohol out of the ditch." O. bottled some of this and sold it to two criminal investigators on the 29th. There are the exhibits referred to. It is true the defendant was not present when the alcohol was bottled or sold but the exhibits were introduced in order to show that it was alcohol which the defendant was keeping for sale, as the testimony showed that what O. sold was what he got from the defendant. After very strenuous cross-examination O. became somewhat confused and said several times "I think it was the 25th," and it may have been several days before he sold to the other witnesses. He said he might have bought it four or five days before he sold it. There was a determined attempt made to show the first transaction with the defendant took place not later than the 24th. Appellant says that as this is the only sale proven to have taken place the jury could not convict because it does not show the sale was made within the time specified in the information. Oakland further testified that on the 29th he went in to see the defendant, the same as he had done before, and asked if he "could have another gallon of alcohol." The defendant told him "yes" but to wait until some parties who were in the pool room had left, and then told him to "go out on the state highway toward Bisbee about four miles out and stop by that grove of trees on the left hand side, going

out of Rock Lake." The sheriff and his deputy, learning that this young man Oakland was going to get some more alcohol from the defendant, posted themselves in the grove opposite the young man's car, about 11:30 P. M. The defendant came, looked into Oakland's car —evidently to see if any one were there—went back to his car, took a can of alcohol, gave this can of alcohol to Oakland and he put it in Oakland's car. The defendant started to drive away. The sheriff stopped him and the defendant said: "Stub, you have got me now, ain't there some way we can fix this up?" When told "no" he said he wanted to go back to town and see his folks and make some arrangements.

Appellant claims the first transaction can not be considered and there is no evidence of sale in the second transaction. The defendant is not charged with a sale, he is charged with "keeping for sale" and the jury had a right to consider whether this second delivery was in furtherance of a sale though the sale was not completed.

It is apparent the defendant was "keeping intoxicating liquors" and the question then became, Was he keeping them for sale as a beverage? His acts, attitude and statements were all pertinent. True, no witness said specifically "I bought for a beverage;" but it is not the sale, but the keeping which is involved. What did his acts show he was keeping the liquor for? Appellant says: "Every hardware and drug store sells alcohol every day in the week, commonly known as denatured alcohol. Much of it is, as a matter of fact, used as a beverage," and then argues this does not show the hardware man keeps it for sale as a beverage.

Appellant says the court will take judicial knowledge "that gifts of liquor are a frequent and common occurrence among friends," and that "the evidence clearly would indicate the transaction was in the nature of either a loan or a gift." It certainly was a strange way of making a loan or a gift to drive several miles out of town at 11:30 at night, examine your friend's car to see whether any one is hiding therein, then take a gallon of alcohol from your car, place it in your friend's car, start to drive away and when stopped by the sheriff make the statement he did. It did not occur to the defendant at that time that he was making a loan or giving a gift.

The jury had a right to determine from the evidence whether the young man was stating the truth when he said the first sale was made

on the 25th and merely became confused on the cross-examination when he said "I think it was the 25th," and what he meant by it may have been several days before he sold to the investigator. From all the circumstances the jury could determine also whether this second transaction was such a delivery as evidenced the defendant was keeping alcohol for sale. Because they are jurors, the members of the jury are not required to divest themselves of common sense. The evidence clearly justifies the verdict.

No reversible error being shown the judgment is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON,. JJ., concur.