## JOHN DRISCOLL v. THE PEOPLE.

*Robbery—Res gestæ—Impeachment of witness.*

A complaint of robbery made to a policeman immediately after its alleged occurrence is admissible on the prosecution as part of the *res gestæ.* So also are the statements made at the same time by the accused.

The credit of a witness cannot be impeached or assailed by the direct testimony of other witnesses to any charge of criminality formerly made against him, unless he has been adjudged guilty; and this must be shown by a record of the judgment.

A witness may be cross-examined, within the proper discretion of the court, not only as to whether he has ever been convicted of crime, but as to any serious charge brought against him.

A witness cannot be contradicted on collateral facts not admissible as direct evidence.

The complaining witness in a prosecution for robbery was cross-examined as to having once been arrested for robbery himself, but he was also

| 47 | 413 |
| 80 | 585 |
| 47 | 413 |
| 82 | 621 |
| 47 | 413 |
| 105 | 106 |
| 105 | 117 |
| 47 | 413 |
| 109 | 398 |
| 47 | 413 |
| 147 9 | 8 |
| 147 9 | 9 |
| 47 | 413 |
| 153 | 9739 |

permitted to explain the affair as not inculpating him. The respondent then introduced the testimony of the officer who had arrested the complaining witness. *Held*, improper; but as the officer's testimony was admitted, it was proper to allow him to be cross-examined as to that arrest and to give exculpatory testimony.

A witness is entitled to the benefit of any explanation affecting the inferences that might be drawn from his having once been arrested on a criminal charge.

Arrest for crime is no evidence of its commission; and a witness cannot be impeached by the direct testimony of other witnesses that he has himself been arrested; and if the question is raised, it is collateral, and he may explain the fact and his explanation cannot be contradicted.

It is allowable for a trial judge to ask a witness whether a conversation testified to as having taken place in his presence could have gone on without his hearing it. The question is somewhat leading, but no more so than is sometimes allowed in impeaching questions, to save time; and if directed merely to the substance of the alleged conversation is less objectionable for its leading character than if it set out the precise language sworn to.

It is not error, though it may be bad taste, for the prosecuting attorney, in commenting on the testimony of a witness, to say to the jury that he had lied.

A charge must be taken together; error will not lie upon detached sentences which, when construed with the rest, are not objectionable.

Where a person on trial for robbery admits the forcible taking, but explains it as an attempt to get back property taken from himself, the question of his good faith depends entirely on whether he simply meant to get back what he believed to be his own. His being intoxicated is a fact which it is proper for the jury to consider.

The omission of specific instructions for the respondent in a criminal case is not error if they were not asked for and the charge actually given was not misleading.

Error to Saginaw.    Submitted Oct. 26.    Decided Jan. 11.

INFORMATION FOR ROBBERY.    Respondent brings error. Judgment affirmed.

*John McArthur* and *William H. Sweet* for plaintiff in error.

Attorney General *Jacob J. Van Riper* for the People.

CAMPBELL, J. Driscoll was convicted of robbery, the person charged to have been robbed being one William Algram, and the crime alleged to have been committed, being described as committed in East Saginaw. When sworn, Algram, who lived at East Saginaw, and is a laborer, testified to an acquaintance with Driscoll, who had formerly been a saloon-keeper in East Saginaw, but for some two years had lived at Farwell. His story was that on the night of the assault Driscoll was visiting East Saginaw, and in company with Algram visited several saloons, drinking a number of times. Finally, as they were in the street, Driscoll, as he testified, seized him and demanded his money, threatening to run a knife through him unless he gave it up. Witness says he took out two bills, amounting to three dollars, which Driscoll snatched from him, and demanded the rest of his money, and tore open his pocket, getting in all seven dollars. Witness ran and called for the police, and having met an officer near the corner of the block, he complained of the robbery and they returned and Driscoll was arrested. There was testimony to the effect that when they came up to Driscoll he was examining some bills by the street lamp, and that he told the officer Algram had taken seven dollars in silver from him, and he had just taken it back, and would have cut Algram's heart out if had not given it back; that on the way to the station-house Driscoll told Algram "If you squeal on me I will fix you;" and at the station charged Algram with having taken the change of a five-dollar bill which Driscoll had got changed at one of the places they visited. There was further testimony about the possession of money, and of a subsequent threat by Driscoll to kill Algram if he squealed on him.

Driscoll, in his statement, averred that instead of robbing Algram, the latter had come up behind and overtaken him, and had put his hand in Driscoll's pocket and taken the bills in question, when Driscoll seized his hand and took them away. He also claimed to have had still more money, a part of which he had supposed he had dropped, and that he had visited some of the saloons with the idea that he might have

lost it in one of them. He also put in corroborating testimony concerning his possession of money, and on other points which became material.

The first error assigned was the admission of the complaint made to the policeman and the refusal to strike it out. We held in *Lambert v. People* 29 Mich. 71, in a similar case to this, that such statements made immediately after the alleged robbery were admissible as part of the *res gestæ.* The whole was practically one continued and brief transaction, and all that took place was of some consequence in construing the conduct of both parties. Some of the statements of the two bore one way and some another, and evidence of Driscoll's story was admitted as well as Algram's. Both were correctly admitted.

Several errors are also alleged, arising out of inquiries concerning an arrest formerly made of Algram on a criminal charge. Having answered on cross-examination that he had been charged jointly with a cousin, before a justice of the peace, with robbing a trunk in his uncle's house, he explained under objection the statements made by the complaining witness as to his innocence, and also explained the transaction, as not inculpating him in any way, and that he was not proceeded against as the thief. Driscoll introduced as a witness one of the police who testified to the arrest of Algram, and his subsequently being as he supposed in his constructive custody, although allowed to be at large. On cross-examination the officer was allowed, under objection, to explain the purposes and circumstances of the arrest and release, and among other things to mention the complaining witness' statement that she knew he was innocent, and did not desire or propose to prosecute him. This exculpatory testimony was objected to.

There is no rule which will allow the credit of a witness to be impeached or assailed by the direct testimony of other witnesses to any criminality or charge of criminality, unless he has actually been adjudged guilty. And this can only be shown by a record of a judgment. *Smith v. Brown* 2 Mich. 162; *Dickinson v. Dustin* 21 Mich. 561.

A witness may be asked on cross-examination within the proper discretion of the court, not only concerning his conviction, but also concerning any serious charge brought against him. *Wilbur v. Flood* 16 Mich. 40; *Clemens v. Conrad* 19 Mich. 170; *Hamilton v. People* 29 Mich. 173.

Very great latitude is sometimes necessary in cross-examination, and we have no doubt it was entirely proper in this case to permit Algram to be fully questioned. *Chandler v. Allison* 10 Mich. 460; *Jacobson v. Metzger* 35 Mich. 103; *Saunders v. People* 38 Mich. 218. But it would be grossly unjust to refuse a witness the benefit of any explanation that may affect the inferences that might otherwise be drawn from a criminal arrest. Such an arrest is no evidence of crime, but is nevertheless more or less calculated unexplained to prejudice the credit of the witness who admits it, and it was entirely proper to allow the circumstances to be shown, and to let it appear that the only responsible complainant did not mean to accuse the witness. *Saunders v. People* 38 Mich. 218; *Arnold v. Nye* 23 Mich. 286.

It is not proper to allow a witness to be contradicted on collateral questions not admissible as direct evidence. *Dunn v. Dunn* 11 Mich. 284; *Fisher v. Hood* 14 Mich. 189; *Hamilton v. People* 29 Mich. 173; *Hitchcock v. Burgett* 38 Mich. 501.

As already stated the question whether the witness had ever been arrested was one which was collateral, and could not be used directly from other witnesses against him to impeach him. It was therefore improper to receive the officer's testimony to attack him, but having been received, it was proper to allow the explanation which removed the obloquy.

A witness named Fennell, called for Driscoll, testified to seeing Algram and Driscoll the evening of the alleged robbery, and described a conversation between himself and Algram, in which reference was made to the time when Driscoll came and where Algram found him, and also to Driscoll's intoxication and the danger of his losing his money; and Fennell said that Algram proposed to take

care of it and get it away from him, from which Fennell dissuaded or sought to dissuade him.

The prosecution in rebuttal called a witness Gaipman who was present, and after stating the substance of Fennell's account, asked if any such conversation substantially occurred. This was objected to as incompetent, but chiefly as leading, and the court, with some doubt, ruled it out, but the judge himself asked the witness whether such a conversation could have gone on without his hearing it, and he replied that it could not, as the parties were too close to him and he must have heard it.

This question of the court was objected to, but we do not think it improper. It was no doubt to a certain extent leading, but no more than is sometimes allowed in order to save time in impeaching questions. It was not beyond the discretion of the court. The objection that the question did not set out the precise language of Fennell is not important, because it was directed merely to the substance, and was really less objectionable in that form, as less leading.

Upon the summing up the prosecuting attorney when commenting on Fennell's testimony said to the jury that Fennell had lied. The prisoner's counsel objected that he had no right to comment upon the testimony of any witness in that manner; that it was for the jury, and not the prosecuting attorney, to find whether or not the witness had lied. The court did not require the expression to be withdrawn and an exception was taken to the refusal.

As it was apparently within the proper range of the prosecution to insist before the jury that Fennell was a false witness, the matter became a question of good taste and not of law. The offense was against the sensibilities of the witness rather than of the party. It can hardly be error to allow an idea to be expressed in language which is no stronger than other words which would convey the same meaning, and would yet be admissible on the issue. See *People v. Winslow* 39 Mich. 505. It is also claimed that the court erred in telling the jury what rule should govern

them in their action. The language complained of is a sentence taken out of its context and discussed here as if it stood alone. The court said in this passage: " You must regard the defendant as innocent when the trial begins, and that presumption continues with and for him, until evidence entitled to credit is given, tending strongly to show that he was connected with the crime charged against him, and tending strongly to show that he was guilty of it."

It is claimed that this left the jury to convict in a case on which they might have reasonable doubts. But the exception stops short in the middle of a sentence, which continued in these words: " and in determining every question in the case, which upon the evidence is left in doubt, that presumption of innocence comes in, and you must determine in favor of the defendant, and so in regard to your final verdict of guilty or not guilty."

The court had also been very emphatic before in impressing upon the jury that they could not convict unless convinced beyond a reasonable doubt. This was done in a manner which seems to have been, and we think ought to have been, considered satisfactory. And when the prisoner's counsel took his exception he only dwelt upon the words " strongly tending," upon which the court reiterated what he had said concerning the necessity of proof beyond a reasonable doubt as relating to all points in the case, and left the charge in that way.

The exception seems to us not warranted by the charge, and as misrepresenting its fair and plain meaning. It is not well taken.

The only remaining exception was taken in the following language: " I also except to the comments of your honor upon the testimony in relation to the defendant's going to the Blair House, his return, and his failing to make any complaint in regard to the loss of his money," etc.

· On this exception the assignment of error although rather more definite is also liable to criticism as not giving the full force of the charge. The language complained of is as follows,—as recited in the assignment: " Consider the defend-

ant's inclination to resent an insult and to fight at the Blair
House; the fact that he fumbles in his pocket at the Naegley
House as though he had lost something; said nothing; went
out part way, came back, drank his beer, and never said one
word or gave any intimation about having lost or missed
any money, so far as the evidence shows."

The comments on this by counsel for Driscoll are—*First*,
that the evidence of his quarrelsome condition is no proof
of guilt; and *second*, that the silence of the prisoner about
his loss was not a proper subject of comment by the court,
and that the court stated he had given no intimation of his
loss, when in fact he had. The evidence containing such
intimation is claimed to be that of several witnesses that he
felt in his vest pocket as though he had lost something.

Upon a close scrutiny of the testimony nothing appears
to show that any other intimation of loss was given than the
fumbling in his pockets that the court alludes to, until he
told the policeman of his loss and of Algram's stealing his
money. But it further appears that a portion of the sen-
tence complained of was evidently meant to favor and not
to injure the prisoner. The court had just before told the
jury that if they thought the prisoner had lost some money
and honestly believed Algram had taken it, and that he was
only getting back his own, he should be acquitted. The
court then went on to say that in determining that question
they should consider the matters quoted substantially in the
assignment of error. But the assignment stops short of and
leaves out the following language immediately succeeding
[consider] "the evidence of the officer that when he came
up the prisoner said the complainant had taken seven dollars
in silver from him; consider Algram's and Wentworth's
statements of what Driscoll said about squealing, and about
the changing of the five dollars at the Blair House, and that
the complainant had taken that change; consider that evi-
dence so far as you believe it and no further, and all other
evidence in the case which you deem entitled to credit, and
find your verdict accordingly. That is the important ques-
tion in the case—indeed I might almost say the only one—

whether he took this money away from Algram, honestly believing it was his own money." Taking this all together it cannot be said that the court did not fairly present all the various matters claimed to bear on this question, and leave the whole fairly to the jury. The prisoner himself admitted a forcible taking of the money from Algram, and the question of good faith depended entirely on whether he meant to get back what he believed to be his own. As intoxication would not be likely to increase a disposition to steal, the reference in the connection made was rather favorable than otherwise. But it was a fact at any rate proper to consider.

No specific instructions were asked by the respondent, and the court cannot be held to have erred in not giving them, so long as the charge actually given was not misleading. Upon a review of the whole charge we think the issue was fairly presented and the jury sufficiently warned to be careful in their conclusions.

We see no reason for disturbing the judgment and it must be affirmed.

The other Justices concurred.