## PEOPLE v. GREEN.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—WARNING OF RIGHTS—CONFESSIONS—EVIDENCE.

   The rule that statements and confessions obtained from a criminal defendant are inadmissible in evidence against said defendant when he was not first warned of his constitutional rights applies only to cases in which trial commenced after June 13, 1966.

2. SAME—FIRST-DEGREE MURDER—EVIDENCE—ADMISSIONS—CONFESSIONS.

   Claim by defendant, convicted of first-degree murder, that reversible error was committed in admitting into evidence certain admissions and a confession made by him before being advised of his right to counsel held, without merit, where defendant's trial commenced in March, 1966, since the rule excluding such evidence applies only to trials commenced after June 13, 1966 (CL 1948, § 750.316).

3. EVIDENCE—ADMISSIBILITY—CONFIDENTIAL COMMUNICATIONS BETWEEN SPOUSES.

   The rule precluding a husband or wife from giving testimony with respect to confidential communication during marriage applies only where communications take place in confidence, and has no application when such communications take place in the presence of third persons (CLS 1961, § 600.2162).

4. SAME—REBUTTAL—WAIVER.

   A party who introduces evidence on a given matter waives any objections he might otherwise have to the introduction of rebuttal evidence on the same matter.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  29 Am Jur 2d, Evidence § 555 et seq.
[3, 5]  58 Am Jur, Witnesses § 381.
[4]  29 Am Jur 2d, Evidence § 269.
    58 Am Jur, Witnesses § 400.
[6]  5 Am Jur 2d, Appeal and Error §§ 778, 779.
[7]  26 Am Jur, Homicide §§ 138, 492.
[8]  26 Am Jur, Homicide § 516.
[9, 10]  53 Am Jur, Trial § 559.

5. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE—CONFIDENTIAL COMMUNICATIONS BETWEEN SPOUSES.

Claim by defendant, convicted of first-degree murder, that reversible error was committed in allowing his former wife to testify with respect to confidential communications which occurred during their marriage *held*, without merit, where the testimony objected to concerned conduct in the presence of a third party and rebutted prior testimony of defendant, since that conversation in the presence of third persons is not a confidential communication and a party may not exclude such testimony which rebuts evidence on a matter previously introduced into evidence by him (CLS 1961, § 600.2162).

6. APPEAL AND ERROR—HARMLESS ERROR—MISCARRIAGE OF JUSTICE.

Error does not warrant reversal or the grant of a new trial unless, from an examination of the entire record, it affirmatively appears that such error has resulted in a miscarriage of justice (CL 1948, § 769.26).

7. HOMICIDE—HARMLESS ERROR—ARGUMENT OF COUNSEL—SELF-DEFENSE.

Claim by defendant, convicted of first-degree murder after pleading self-defense, that reversible error was committed by the prosecutor in arguing to the jury that defendant's counsel would have introduced into evidence the contents of the decedent's pocket if it had contained a weapon, when there was no testimony that the entire contents thereof had been made available to defendant's counsel *held*, without merit, where such statement merely related what was obvious to everyone in the courtroom, and the court properly instructed the jury that it was defendant's good-faith apprehension of danger, and not the presence of actual danger, that was necessary to establish self-defense, since such remark, under the circumstances, did not deprive defendant of a fair trial (CL 1948, §§ 750.316, 769.26).

8. SAME — INSTRUCTIONS — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER.

Claim by defendant, convicted of first-degree murder, that the trial court committed reversible error by failing to properly instruct the jury concerning distinctions between first-degree and second-degree murder *held*, without merit, where the instructions of the court taken as a whole, are found to be proper and in accordance with instructions requested by defendant (CL 1948, §§ 750.316, 750.317).

9. Trial—Instructions—Reiteration.

    The trial judge, upon receiving a request from the jury for additional instructions with respect to one element of a case, is not required to reiterate instruction with respect to remaining elements.

10. Homicide—Murder—Reiteration of Instructions.

    Trial court's action in reiterating and supplementing instructions upon the issue of premediation in connection with a charge of first-degree murder *held,* proper, where such additional instructions were requested by the jury, there being no requirement that the court, absent a request by the jury, reiterate instructions previously given concerning the remaining issues involved (CL 1948, § 750.316; GCR 1963, 516.2).

Appeal from Kent; Searl (Fred N.), J. Submitted Division 3 April 4, 1967, at Grand Rapids. (Docket No. 2,248.) Decided July 10, 1967. Leave to appeal denied November 16, 1967. See 379 Mich 788.

Willie Green was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Reynolds A. Brander, Jr.,* Assistant Prosecuting Attorney, for the people.

*Cholett, Perkins & Buchanan (Frederick W. Bleakley,* of counsel), for defendant.

Holbrook, J. Defendant was tried and convicted of first-degree murder* before a jury in the Kent county circuit court in March of 1966. After denial of his motion for new trial he has appealed to this Court.

The pertinent facts appear in the record as follows: The defendant shot James Williams at approximately 7:30 p.m., December 31, 1965, at the home of his former wife, Bertha Green, at Grand

---

    * CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

Rapids.  He left the home before the arrival of police and was apprehended at 9:16 p.m. that same evening.  He was advised that he had the right to remain silent and that anything he said would be used against him.  He was asked if he had a gun or if he hid a gun any place, and he stated that if the officer would give him a cigarette he would tell him where the gun was.  Upon being given a cigarette, he took the officer to where he had placed the gun.  No objection was made to this testimony. When he was taken to police headquarters, he was advised by Detective Robert Scott of his constitu- tional rights including the fact that he was entitled to have an attorney present and if he couldn't afford an attorney, one would be appointed for him by the court.

Subsequently, he was questioned and confessed to the crime.  This confession was testified to by the investigatory officer at the trial.  Defendant did not object to any of this testimony and his counsel cross-examined the witness at some length eliciting further statements made by defendant concerning the transaction.

Defendant claimed that the decedent had been living in his former wife's home and that gambling was going on in the presence of his children.  He further claimed that the homicide was justifiable because he did it in self-defense.

The defendant raises several question for review which will be dealt with in proper order.

1. *Were the admissions and confession of defendant properly admitted in evidence?*

The testimony was not objected to by defendant. Defendant made no claim that the admissions and confession made by him to police officers were involuntary, either at the trial or in his motion for a new trial.  Defendant asserts for the first time

in this Court that his admissions and confession were involuntary because he had not previously been informed of his right to counsel. It is his present position that being informed of the right to consult counsel before making an admission against interest or a confession is a constitutional right as defined in *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977), and *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694) as interpreted in *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882). In *People* v. *Griffin* (1966), 4 Mich App 604, we discussed at great length the cases of *Escobedo, Miranda,* and *Johnson, supra.* Therein the trial commenced after *Escobedo* and prior to *Miranda,* as is also true in the instant case. Under the facts therein, we determined that reversible error was not committed by admission into evidence of statements obtained from an accused not advised of his constitutional rights, where trial commenced prior to June 13, 1966. We are equally compelled under the facts in the case at hand to come to the same conclusion. Also, see *People* v. *Robbins* (1967), 6 Mich App 633.

2. *Was reversible error committed when defendant's former wife testified to claimed confidential matters occurring during their marriage?*

The testimony of Bertha Green claimed to be reversible error is as follows:

"*Q.* Willie Green assault you on September 6, 1962?

"*A.* He did.

"*Q.* What did he assault you with?

"*A.* I don't know. It was a knife. That is what he had.

"*Q.* What did it do to you?

"*A.* He stabbed me in back of my neck, and he struck me here on the jaw and on my arm.

"*Q.* Have you got any scar that is visible?

"*A.* Yes. Got one right there.

"*Q.* Where?

"*A.* See (Pointing).

"*Q.* From this attack?

"*A.* That's right.

"*Q.* Did you go to court on that occasion?

"*A.* I did.

"*Q.* At the time he attacked you with this knife, or whatever it was, did he say anything to you?

"*A.* I was sitting—it was one evening, just about 4 o'clock, one afternoon, and I was sitting down watching 'Popeye,' me and my sister and my daughter Barbara Ann. So he come up the stairs. He was drunk. And so he started to argue with me, and he just kept walking by and by and arguing, and that was past me, backwards and forwards, one room into the other. When he come back through the room again that's when he stabbed me in my neck.

"*Q.* Did he have something you saw?

"*A.* He had a little old knife with a wooden handle, looked like the blade had been broke off.

"*Q.* Did you see him before he stabbed you with that?

"*A.* No, I was sitting down, I was looking at TV. He come in behind me and stabbed me. I jumped up and was scuffling with the knife. That is when he cut me on the jaw and on my arm.

"*Q.* Could it have been a fish knife or fish scaler?

"*A.* It wasn't a fish knife. It was a little old knife. It wasn't a paring knife. It looked like a little old tin knife but the blade had been broke off sharp.

"*Q.* You were standing?

"*A.* I was sitting down.

"*Q.* Did you say anything to him?

"*A.* I didn't say anything to him. He just come up the steps and come up and argue with me.

"*Q.* Did he say anything to you threatening at that time?

"*A.* He had said before if he ever went to jail again, if he went to jail I would go to Milo Brown's.

"*Q.* When did he say that?

"*A.* That was before he stabbed me in my neck, because he had stabbed me in my hip once before that.

"*Q.* When had he done that?

"*A.* I don't know exactly when it was.

"*Q.* But not that night?

"*A.* Not that time.

"*Q.* What did he say to you, 'I am not going to jail'?

"*A.* He told me if he ever stab me again he wasn't going to no jail. I was going to Milo Brown's.

"*Q.* You were going to Milo Brown?

"*A.* I was going to Milo Brown.

"*Q.* What is Milo Brown?

"*A.* That's an undertaker."

The defendant had previously testified concerning the same transaction on direct examination as follows:

"*Q.* You mean you had a heated argument then with your wife?

"*A.* Yes.

"*Q.* When did this happen?

"*A.* This happened sometime after that. So my wife wanted to go out again. So I told her, I said, 'No. I think you should stay in.' I say, 'You kind of pulling the wool over my eyes.' We had argued about this and she claimed it wasn't true. And so I said, 'You better stay home.' So we were sitting out on the front porch and my sister-in-law and my wife had 4 or 5 quarts of beer. And somehow or other this James Williams drove by the house, and they like to have jumped off the porch. So that made me mad, and me and my wife got in

a hot argument and we got to fighting. So I had
an old fish scaler you use to scrape fish with in
my pocket. We got to tussling around. So I had
the thing out in my hand and I scraped her on the
shoulder with it, and up there alongside the jaw
and my sister ran."

The testimony of defendant was admitted into
evidence without objection prior to the rebuttal
testimony of his former wife, Bertha Green. If
admissible it was because it took place in the pres-
ence of third parties. *People* v. *Bowen* (1911), 165
Mich 237. The rebuttal testimony relating to the
same transaction was likewise admissible for the
same reason and would not constitute error.

3. *Was the rebuttal argument of the prosecuting
attorney so improper as to constitute reversible
error?*

The part of the questioned argument is as follows:

"Ladies and gentlemen, I might mention one
other small item. It has been stated that no one
has introduced in evidence what was in James Wil-
liams' pocket. Well, it was marked and shown to
Kail and I never did introduce it in evidence, but
I say this, you can be mighty sure that as it was
shown to Kail, if there was any weapon in those
possessions—

"*Mr. Kail:* I am going to object to this, your
Honor.

"*The Court:* On what ground?

"*Mr. Kail:* Stating that something here was
shown to me which was everything taken out of
the man's pocket and therefore must be—

"*The Court:* I don't think he has a right to say
everything was taken out because there is no tes-
timony to that, is there? Is there any testimony
that was everything taken out?

"*Mr. Miller:* Testimony that was found by the
nurse.

"I will limit my remarks to those articles, if there had been a weapon in those articles, to say that Mr. Kail with his skill and his ability certainly would have introduced those items in this case."

The trial judge stated in his opinion on motion for new trial as follows:

"While not mentioned in the written motion, counsel complained upon the oral argument about part of the prosecuting attorney's argument upon the trial. The portion of the proceedings relating to this matter have been transcribed. Defendant's counsel made objection and it was sustained, and nothing further occurred. It would stand to reason that if there had been a weapon in the deceased's pocket, defense counsel would have brought the matter to the attention of the jury, and the prosecutor's argument was only a statement of what was obvious to everyone in the courtroom. Moreover, the jury were instructed in substance, as in all self-defense cases, that it was not necessary that the danger to the defendant should have been actual and real, that all that was necessary was that the defendant believed in good faith that he was in danger.

"I find nothing in this incident which deprived the defendant of a fair trial."

Assuming the argument by the prosecuting attorney to be improper we must, in order to reverse or grant a new trial, determine after an examination of the entire cause that it affirmatively appears that it has resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). *People* v. *Keiswetter* (1967), 7 Mich App 334. This we cannot do because we agree with the trial judge's ruling that there was nothing in this incident which deprived defendant of a fair trial. No prejudicial error resulted.

4. *Defendant's last issue questions the court's instruction concerning first- and second-degree murder and particularly instructions given to the jury at their request for "a little more clarification on the word 'premeditation.'"*

These instructions are as follows:

*"The Court:* I will read this to you just the same as I said before, and then if there is any further question you can ask me.

"What do we mean by premeditation? Premeditation imports deliberation, reflection, and thought in the formation of an intention, prior to the actual doing of the act resulting in death, in this case [before] the shooting. It is not necessary that any definite period of time elapse between the fixing of the intention and the actual shooting. But there must have been sufficient time for the intention to have been formed and for the shooting to be deliberate, wilful and premeditated.

"That was the instruction I gave you before. Is there any further question that anyone would like to ask? That is a standard instruction upon it. I don't know whether it is entirely clear.

*"The Foreman:* I think that clarifies it.

*"The Court:* I will see if I can find a better one here, or one that is helpful at all.

"Here is another standard instruction on the subject that has been approved:

"Murder in the first degree is a killing done willfully and with premeditation, while murder in the second degree the element of premeditation is absent. To convict the defendant of murder in the first degree it must appear, and of course beyond a reasonable doubt, that the killing was wilful and premeditated. It is not necessary that any definite period of time should have elapsed between the forming of such intention and the doing of the act which killed the deceased, providing that the act was premeditated and the defendant acted willfully.

"On the other hand, if the killing was done under a sudden impulse, without premeditation or previously formed intention, the offense, if murder, would be murder in the second degree."

In the court's main charge the trial judge instructed the jury concerning the offenses to be considered and we set forth in italics the part that the trial judge repeated to the jury upon their request, as follows:

"First we will define murder, the general term murder, which includes both murder in the first and murder in the second degree. Murder is defined as the offense committed when a person of sound mind, wilfully and intentionally and unlawfully kills another with malice aforethought.

"Manslaughter is the wilful and intentional and unlawful killing by a person of sound mind but without malice. Manslaughter is the offense that is committed without malice, without premeditation, the result of temporary excitement by which the control of reason is disturbed rather than from any wickedness of heart or cruelty or recklessness of disposition.

"So the difference between murder and manslaughter is the element of malice. Murder requires that there be malice present. In manslaughter the element of malice is missing. And, of course, I shall a little later define to you the meaning of the word malice as I have used it in these definitions. First, however, I shall distinguish between murder in the first degree and murder in the second degree.

"Murder in the first degree is murder done wilfully and with premeditation. Murder in the second degree is a murder done without premeditation. So the distinction between murder in the first degree and murder in the second degree is this element of premeditation.

"In order to convict the defendant of murder in the first degree it must be established beyond a

reasonable doubt that the killing was wilful, intentional, with malice, and with premeditation.

"Now, *what do we mean by premeditation? Premeditation imports deliberation, reflection, and thought in the formation of an intention, prior to the actual doing of the act resulting in death, in this case before the shooting. It is not necessary that any definite period of time elapse between the fixing of the intention and the actual shooting. But there must have been sufficient time for the intention to have been formed and for the shooting to be deliberate, wilful and premeditated.*

"If you find that the shooting and resulting killing was murder, but was done under a sudden impulse and without premeditation, it is not murder in the first degree but would be murder in the second degree.

"Now, I have said to you that in either murder in the first degree or murder in the second degree, malice is a necessary element, and that if malice is not established beyond a reasonable doubt, the killing is not murder.

"The term 'malice' is used here in a legal sense, and includes not only acts done of hatred and revenge, but also every other unlawful act done intentionally and without adequate cause or provocation.

"At this point we come to the offense of manslaughter. Manslaughter is the wilful and unlawful killing by a person of sound mind, without malice. So, as I have said before, the distinction between murder and manslaughter is this: In murder there is malice and manslaughter there is not malice.

"Bearing upon this element of malice there comes a question of provocation. If one kills another willfully and unlawfully, without adequate provocation, then there is malice, and the offense is murder. If there is sufficient provocation, then there is an absence of malice, and the offense, if there is an offense, is manslaughter." (Emphasis supplied.)

Defendant's second requested instruction of the court states in part as follows:

"I instruct you that murder in the first degree is a killing done willfully and with premeditation, while murder in the second degree, the element of premeditation is absent, however the killing must have been done willfully and with malice, express or implied."

The trial judge fully complied with the request in his main charge and substantially complied with the same in the supplemental charge.

The supplemental instructions must be read in context with the main instructions. We conclude that the trial judge properly instructed in regards to the jury's request for clarification of the word "premeditation."

Absent a request by the jury, it was not error to fail to reiterate the previous instructions concerning the charges involved. No objection to these instructions were raised before the trial court at the trial as required by GCR 1963, 516.2 nor in the defendant's motion for a new trial.

Affirmed.

BURNS, P. J., and RYAN, J., concurred.