## PEOPLE v DARWALL

Docket No. 77-1026. Submitted February 14, 1978, at Detroit.—Decided April 18, 1978. Leave to appeal applied for.

Darwall (defendant's full legal name) was found to be guilty but mentally ill of murder in the second degree and assault with intent to commit murder in Recorder's Court of Detroit, Samuel C. Gardner, J. Defendant appeals raising four issues: During the trial the court erred when it denied defendant's motion to declare the statute providing for instructions on a verdict of "guilty but mentally ill" unconstitutional and instructed the jury that they must return a verdict of not guilty by reason of insanity or a verdict of guilty but mentally ill; the court refused to give defendant's requested instruction that soundness of mind was an element of murder and had to be proven by the prosecution beyond a reasonable doubt; the prosecutor made certain remarks in closing argument which defendant claims deprived him of a fair trial; the court proceeded to instruct the jury on the definition of reasonable doubt over defendant's objection that the term needed no definition. *Held:*

1. The statute requiring jury instructions to the effect that, where warranted by the evidence, the jury should consider separately the issues of the presence or absence of mental illness and the presence or absence of legal insanity and instructions on the verdicts of guilty, guilty but mentally ill, not guilty by reason of insanity, and not guilty does not shift

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 21 Am Jur 2d, Criminal Law §§ 45, 50–53.
  75 Am Jur 2d, Trial §§ 738, 739, 742, 883.
[2, 4, 6] 21 Am Jur 2d, Criminal Law §§ 50, 52.
  Modern status of rules as to burden and sufficiency of proof of mental irresponsibility in criminal case. 17 ALR3d 146.
[3] 16 Am Jur 2d, Constitutional Law § 137 *et seq.*
[5] 16 Am Jur 2d, Constitutional Law § 533 *et seq.*
[6, 7] 40 Am Jur 2d, Homicide §§ 499, 515, 516.
  75 Am Jur 2d, Trial § 846.
[7] 40 Am Jur 2d, Homicide §§ 534, 535.
[8] 75 Am Jur 2d, Trial § 260.
[9] 75 Am Jur 2d, Trial §§ 827, 830–836.

the burden of proof to the defendant to prove his insanity and does not unconstitutionally discriminate against him.

2. The burden of proof of sanity beyond a reasonable doubt is on the prosecution if the issue is raised at trial by introduction of some evidence tending to overthrow the presumption of sanity.

3. The state's interest in protecting society from insane defendants who exhibit dangerous tendencies and in securing proper treatment for persons suffering from mental illness bears a reasonable relation to a statutory provision for two special verdict types indicating the jury's findings as to insanity and mental illness. The statute does not, therefore, violate the equal protection clause.

4. The trial court did not err in refusing to instruct the jury that "soundness of mind" was an element of murder requiring proof by the prosecutor beyond a reasonable doubt and was synonymous with "sanity", where the judge instructed the jury that "there is a burden on the prosecutor to prove beyond a reasonable doubt that defendant was sane" and where he cautioned the jury that defendant had no burden to prove anything.

5. A trial judge does not abuse his discretion in supplying to the jury only those supplemental instructions requested by the jury where at trial the jury first requested supplemental instructions on the definitions of first and second-degree murder and later the jury requested supplemental instructions on premeditation and the definitions of the three possible assaults and the defendant asked that, in addition to the requested instructions, the jury be given an instruction that sanity was an indispensable element of the crimes charged.

6. A defendant has no right to prevent a judge from giving a proper jury instruction on the definition of reasonable doubt, and an instruction that defines "beyond a reasonable doubt" as a "conviction to a moral certainty" is proper.

Affirmed.

M. F. CAVANAGH, J., concurred in the result only.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—STATUTES—SANITY—MEN-
   TAL ILLNESS—BURDEN OF PROOF.

A statute mandating that a jury be instructed, where the evidence warrants, to consider separately the issues of the presence or absence of mental illness and the presence or absence of legal insanity and instructed as to the verdicts of guilty, guilty but mentally ill, not guilty by reason of insanity, and not guilty does not unconstitutionally shift the burden of proof to

the defendant nor does it unconstitutionally discriminate against him (MCLA 768.29a[2]; MSA 28.1052[1] [2]).

2. Criminal Law—Sanity—Evidence—Burden of Proof—Presumption.

While it is true that at the outset of a criminal trial there is a presumption of sanity of the defendant, as soon as evidence is introduced tending to overthrow that presumption, the burden of proof rests with the people to convince the trier of fact beyond a reasonable doubt of the defendant's sanity, that being one of the necessary conditions upon which guilt may be predicated.

3. Constitutional Law—Statutes—Judicial Review—Legislature.

A statute must be treated with the deference due to a deliberate action of a coordinate branch of our state government and the conflict between the statute and the constitution must be clear and inevitable before the statute will be struck down as unconstitutional.

4. Criminal Law—Sanity—Burden of Proof.

The burden is upon the people to prove a defendant sane beyond a reasonable doubt if that issue is raised in the trial court.

5. Constitutional Law—Equal Protection—Statutes—Criminal Law—Sanity.

The equal protection clause of the constitution demands only that the government not impose differences in treatment on persons similarly situated except on the basis of some reasonable differentiation fairly related to the object of the law; a state's interest in protecting society from insane defendants who exhibit dangerous tendencies and in securing proper treatment for such persons suffering from mental illness bears a reasonable relation to a statute's provision for two special verdict types indicating the jury's findings as to insanity and mental illness (MCLA 768.29a[2]; MSA 28.1052[1] [2]).

6. Criminal Law—Murder—Instructions to Jury—Burden of Proof—Soundness of Mind.

A trial court did not err in refusing to instruct the jury that soundness of mind is an essential element of murder, requiring proof by the prosecutor beyond a reasonable doubt, where it properly instructed the jury as to all the elements of the crimes, that "there is a burden on the prosecutor to prove beyond a reasonable doubt that the defendant was sane", and cautioned the jury that the defendant has no burden to prove anything.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—SUPPLEMENTAL INSTRUC-
TION—DEFENSE OF INSANITY.

There is no requirement, when a jury has asked for supplemental
instruction on specific areas, that the trial judge give all of the
instructions previously given; thus, a trial court did not abuse
its discretion in failing to refer to defendant's defense of
insanity when responding to the jury's request for supplemen-
tal instruction on the definitions of murder in the first and
second degrees, on definitions of the three assaults upon which
they had been previously instructed and on premeditation.

8. CRIMINAL LAW—PROSECUTORS—CLOSING ARGUMENT—INFERENCES.

Prosecutors must be allowed reasonable latitude in arguing to the
jury inferences from the facts on which they rely to establish
guilt.

9. CRIMINAL LAW—INSTRUCTIONS TO JURY—REASONABLE DOUBT.

A defendant has no right to prevent the judge from giving a
proper "reasonable doubt" instruction; a trial court did not err
in giving the jury, over defendant's objection, an instruction
defining "beyond a reasonable doubt" as a "conviction to a
moral certainty".

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *Timothy A. Baughman,*
Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: D. E. HOLBROOK, P. J., and V. J. BREN-
NAN and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, P. J. On January 27, 1977, de-
fendant Darwall was found guilty but mentally ill
by a Recorder's Court jury of murder in the second
degree, contrary to MCLA 750.317; MSA 28.549,
and assault with intent to commit murder, con-
trary to MCLA 750.83; MSA 28.278. On February
4, 1977, defendant was sentenced to life imprison-
ment on each count and given credit for 475 days

already served in jail. Defendant appeals as of right from these convictions.

The relevant facts are these. Darwall lived in a 22-room co-op in Detroit. Among the people who lived in the co-op were Robert McGillivay, Christina Reynolds and Maketa Schlega. On October 18, 1975, Robert McGillivay, Maketa Schlega and Christina Reynolds were in the kitchen of the co-op talking. Bob McGillivay left the kitchen and within 30 seconds, Maketa Schlega and Christina Reynolds heard a shot. Schlega went from the kitchen into the hall to investigate and saw McGillivay lying on the floor. McGillivay was moaning that Darwall had shot him. Schlega looked up and saw Darwall standing over McGillivay reloading a shotgun. Darwall then pointed the gun at Schlega and Schlega ran out of the house and called the police. No shot was ever fired at him. Later, as the police were bringing Darwall out of the house, Schlega asked defendant why he did it. Defendant said, "Shut up. Shut up. I would have gotten you, too, mother-fucker, if the gun had been cocked".

After calling the police, Schlega went back inside the house to find Christina Reynolds. He found her with her blouse "blown away" and her left side covered with blood.

Christina Reynolds testified that when she and Schlega heard the shot, she heard Bob McGillivay yell, "Darwall's got a gun and he just shot me". She stated that after Schlega went into the hall to see what happened, he yelled for her to hide. As she was trying to hide, she looked up and saw Darwall standing in front of her. He pointed the shotgun at her and fired it. She then pretended to be dead and laid there until he left. The emergency room physician that examined Christina

after the shooting testified that one-third to one-half of her left breast had been torn off by the shotgun blast. Also, her left arm was so badly wounded that it was questionable whether or not the arm could be saved.

Darwall was arrested immediately after the shootings and a shotgun was seized from him. The shotgun was a single shot which required that it be loaded and cocked each time after it was fired.

The defendant raised the defense of insanity. Each side produced expert testimony concerning defendant's sanity when he shot the victims. The defendant did not testify.

The first issue raised on appeal is whether the verdict forms "guilty but mentally ill" and "not guilty by reason of insanity" deny defendant due process of law by shifting the burden of proof regarding sanity to him or equal protection of the law by unfairly discriminating against him on the basis of his defense of insanity.

Darwall challenges MCLA 768.29a(2); MSA 28.1052(1)(2), which provides:

"At the conclusion of the trial, where warranted by the evidence, the charge to the jury shall contain instructions that it shall consider separately the issues of the presence or absence of mental illness and the presence or absence of legal insanity and shall also contain instructions as to the verdicts of guilty, guilty but mentally ill, not guilty by reason of insanity, and not guilty with regard to the offense or offenses charged and, as required by law, any lesser included offenses."

The enabling statute for the "guilty but mentally ill" verdict is MCLA 768.36; MSA 28.1059. Defendant's argument is based on his due process right to be free of the burden of proof in a criminal prosecution and his equal protection right not to be

discriminated against unfairly. Darwall also claims that the forms of the verdicts (guilty but mentally ill, not guilty by reason of insanity) constitute special verdicts which are improper in a criminal case.

Counsel argues admirably on behalf of his client. However, this Court holds that defendant's argument is not applicable under Michigan law. Defendant asserts that the two verdict forms of not guilty by reason of insanity and guilty but mentally ill, unconstitutionally shifts the burden of proof to the defendant. Defendant's assertion is without support in Michigan case law. Justice COOLEY in the early case of *People v Garbutt,* 17 Mich 9, 21–22; 97 Am Dec 162 (1868), wrote:

"The prosecution takes upon itself the burden of establishing not only the killing, but also the malicious intent in every case. There is no such thing in the law as a separation of the ingredients of offense, so as to leave a part to be established by the prosecution, while as to the rest the defendant takes upon himself the burden of proving a negative. The idea that the burden of proof shifts in these cases is unphilosophical, and at war with fundamental principles of criminal law. The presumption of innocence is a shield to the defendant throughout the proceedings, until the verdict of the jury establishes the fact that beyond a reasonable doubt he not only committed the act, but that he did so with malicious intent.

"It does not follow, however, that the prosecution at the outset must give direct proof of an active malicious intent on the part of the defendant; or enter upon the question of sanity before the defendant has controverted it. The most conclusive proof of malice will usually spring from the circumstances attending the killing, and the prosecution could not well be required in such cases to go further than to put those circumstances in evidence. And on the subject of sanity, that condition being the normal state of humanity, the

prosecution are *[sic]* at liberty to rest upon the presumption that the accused was sane, until that presumption is overcome by the defendant's evidence. The presumption is overcome by the defendant's evidence. The presumption establishes, *prima facie,* this portion of the case on the part of the government. It stands in the place of the testimony of witnesses, liable to be overcome in the same way. Nevertheless it is a part of the case for the government; the fact which it supports must necessarily be established before any conviction can be had; and, when the jury come to consider the whole case upon the evidence delivered to them, they must do so upon the basis that on each and every portion of it they are to be reasonably satisfied before they are at liberty to find the defendant guilty."

This holding was reiterated in *People v Eggleston,* 186 Mich 510, 514; 152 NW 944 (1915), wherein the Court wrote:

"While it is true that at the outset there is a presumption of sanity, as soon as evidence is introduced on behalf of respondent tending to overthrow that presumption, the burden of proof rests with the people to convince the jury beyond reasonable doubt of the respondent's sanity, that being one of the necessary conditions upon which guilt may be predicated."

See also, *People v Krugman,* 377 Mich 559, 563; 141 NW2d 33 (1966), *People v Sargeant,* 65 Mich App 691, 696–697; 238 NW2d 175 (1975), and *People v Marvin White,* 81 Mich App 335; 265 NW2d 139 (1978).

In the instant case, the trial judge laid down the proper rule with reference to the burden resting upon the people.

In regards to the verdict of guilty but mentally ill, MCLA 330.1400a; MSA 14.800(400a) defines mental illness as follows:

"As used in this chapter, 'mental illness' means a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

The trial judge instructed the jury as follows:

"Mental illness means a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

Thus, the trial judge correctly instructed the jury on the definition of mental illness. We follow this Court's holding in *People v McLeod,* 77 Mich App 327, 331; 258 NW2d 214 (1977), wherein our Court stated:

"It is well settled that a statute must be treated with the deference due to a deliberate action of a coordinate branch of our state government and that the conflict between the statute and the constitution must be clear and inevitable before the statute will be struck down as unconstitutional. *Township of Dearborn v Dearborn Township Clerk* [334 Mich 673, 680; 55 NW2d 201 (1952)], *People v Guerrero* [57 Mich App 316, 319; 225 NW2d 746 (1975)]. At this time and on this record, we do not find such clear and inevitable conflict between the questioned statute and the constitution. We, therefore, decline to hold this statute unconstitutional as to this defendant." (Footnotes omitted.)

See also, *People v Desi Jackson,* 80 Mich App 244; 263 NW2d 44 (1977), *People v Marvin White, supra.*

Under the established law in Michigan, the burden is upon the people to prove a defendant sane beyond a reasonable doubt if that issue is raised in the trial court. We are cognizant that in

other jurisdictions this rule does not prevail[1] and a burden is placed upon a defendant to prove insanity either beyond a reasonable doubt or by a preponderance of the evidence.

The defendant's equal protection challenge to this statute is based upon his assertion that the application of special verdicts like guilty but mentally ill and not guilty by reason of insanity constitutes unfair discrimination. We find this challenge without merit.

The equal protection clause demands only that the government not impose differences in treatment on persons similarly situated except on the basis of some reasonable differentiation fairly related to the object of the law. The defendant has not shown such a violation of equal protection. The statute treats the same all criminal defendants charged with murder and in a similar situation.

The state's interest in protecting society from insane defendants who exhibit dangerous tendencies and in securing proper treatment for such persons suffering from mental illness certainly bear a reasonable relation to this statute's provision for two special verdict types indicating the jury's findings as to insanity and mental illness. The law passes muster if its classification is reasonably related to the legislative purpose. *FS*

---

[1] In *Leland v Oregon,* 343 US 790; 72 S Ct 1002; 96 L Ed 1302 (1952), the Court held the due process clause does not prevent Oregon from requiring that the defendant prove insanity beyond a reasonable doubt as a defense in a murder prosecution. Additionally, in *Rivera v Delaware,* 429 US 877; 97 S Ct 226; 50 L Ed 2d 160 (1976), the United States Supreme Court dismissed an appeal challenging Delaware's requirement that a defendant prove insanity by a preponderance of the evidence for want of a substantial Federal question. This seems to affirm the Court's previous holding in *Leland* because a summary disposition is a decision on the merits having precedential effect within the meaning of *Hicks v Miranda,* 422 US 332; 95 S Ct 2281; 45 L Ed 2d 223 (1975).

*Royster Guano Co v Virginia,* 253 US 412, 415; 40
S Ct 560; 64 L Ed 989 (1920). Therefore, defend-
ant's issue is without merit.

Next, defendant argues that he was denied his
US Const, Am XIV right to a fair trial when the
trial court refused to instruct the jury that sound-
ness of mind is an essential element of murder,
requiring proof by the prosecutor beyond a reason-
able doubt, and the trial court erred in the giving
of the supplemental jury instruction which omit-
ted reference to the defense of insanity.

The defendant requested the following instruc-
tion:

"I instruct you, members of the jury, that an element
of the crime of murder is soundness of mind of the
accused. A person who is not of sound mind at the time
of the commission of the alleged murder cannot be
found guilty of the crime of murder. Nor can a person
not of sound mind intend to commit the crime of
murder.

"Therefore, since soundness of mind of the accused is
an element of the offense of murder, I instruct you that
when the accused raises the issue of his sanity at the
time the alleged murder was committed, the burden is
upon the prosecution to prove beyond a reasonable
doubt that the accused was sane at the time of the
commission of the alleged murder. I instruct that
'soundness of mind' and 'sanity' mean the same thing;
the terms are synonymous."

The trial court properly instructed the jury as to
all the elements of the crimes and also that:

"There is a burden on the prosecutor to prove beyond
a reasonable doubt that the defendant was sane.

"And, I want to caution you that the defendant has
no burden to prove anything in this case."

Thus, the trial court committed no error in these instructions.

The jury, after a period of deliberation, returned to the courtroom for supplemental instructions on the definitions of murder of the first degree and murder of the second degree. The court had the reporter read to the jury the court's entire instruction on the definitions of murder of the first and second degrees. After further deliberations, the jury returned to the courtroom a second time and asked the court for further instructions on premeditation and the definitions of the three assaults upon which the court had instructed the jury. The court complied with this request.

The defendant asserts that error occurred in the supplemental instructions because the court did not mention defendant's defense of insanity, thus, "The question of defendant's insanity was buried amid multitudinous instructions on the elements of the crimes charged with the important and indispensable element of sanity not mentioned at all".

There is no requirement that when a jury has asked for supplemental instruction on specific areas that the trial judge is obligated to give all of the instructions previously given. The trial judge need only give those instructions specifically asked.

As stated in *People v Green,* 7 Mich App 346, 358; 151 NW2d 834 (1967): "Absent a request by the jury, it was not error to fail to reiterate the previous instructions concerning the charges involved". On the basis of *Green, supra,* and the trial court's charge as a whole in this case, it is apparent that the supplemental instructions given did not constitute an abuse of discretion by the trial judge and defendant's issue is without merit.

Third, defendant maintains that the prosecutor gave an improper closing argument. The following are the paragraphs of the prosecutor's closing to which the defendant objects:

(1) "Well, if you can believe what I consider to be a device calculated to account for facts which can't otherwise be accounted for, these devices that he thought himself as a Policeman and he wanted them to recognize him since he wasn't in uniform, he was an undercover Policeman, and that is why he said, 'Don't shoot me.'

\* \* \*

(2) "Five days before he committed this crime he goes to the J. L. Hudson Company and he buys the gun. Why? Why did he buy the gun? There is no indication that he was going duck hunting. This was in October. I don't know. Maybe it wasn't the bird season.

\* \* \*

(3) "Of course, the defense in this case is insanity. And the Court is going to give you a legal definition of insanity. But I say to you there is a considerable difference between a sick mind and sick soul. And I say, too, there is a difference between the sanity of a mind and moral sanity. And you listen carefully as the Judge instructs you on the definition of the insanity and mental illness and so forth. Because it appears from the facts in this case that what has been done is that a sickness of soul has been used to counterfeit mental illness as a defense to a charge of Murder, by reason of an expertise in—.

\* \* \*

(4) "You heard the testimony of Doctor Danto, who saw through all of the shenanigans that the Defendant employed.

\* \* \*

(5) "The Defense chose to put people on the Witness Stand to testify and there we did get some truth from them because they were honest people.

\* \* \*

(6) "Counsel in touching upon some of the points I touched upon in My Opening Closing Arguments chose to answer certain things. Of course he didn't explain to you why he had ten shotgun shells in his pocket, nor why he told Christina Reynolds 'Don't let them shoot me,' Nor why he told the Police, 'I have a gun. Don't shoot me.'

\* \* \*

"I would point out to you things defense counsel chose not to answer in his arguments, things that he chose not to answer. And I say to you that since he has had an opportunity to answer them and chose not to answer them, it is a pretty logical conclusion that he couldn't.

\* \* \*

(7) "You know, you remember about the mescaline and the hallucinogens and the—.

\* \* \*

"So the first time he goes to seek any help is after he takes mescaline and he needs it because he finds—I don't know if he ever took it again. I don't know anything about it. I don't know what his continued use of it was. But he was discharged from that hospital. You remember that?

\* \* \*

(8) "I say to you, don't buy this story that the defendant is trying to sell to you that he just put them in there and just shot. The fact is, he murdered them, he assaulted them."

The defendant asserts that the prosecutor erred in the manner stated as to the following paragraphs:

(1), (4) and (5) expressed his personal opinion on the credibility of witnesses and the facts in the case.

(2) and (6) impermissibly commented upon the fact that the defendant did not testify.

(3) expostulated nonexistent law to the prejudice

of the defendant and expressed the prosecutor's personal opinion as to guilt of defendant.

(7) deliberately invited the jury to consider that defendant probably used mescaline on a regular basis.

(8) expressed his personal opinion that the defendant was guilty.

We have carefully examined the prosecutor's closing arguments in conjunction with the evidence brought out at trial and find no reversible error. In support of our ruling we turn to *People v Davis*, 57 Mich App 505, 511, 513; 226 NW2d 540 (1975), *lv den*, 399 Mich 878 (1977), wherein this Court discussed prosecutorial misconduct in closing argument and stated:

"Now to the final issue to be discussed: prosecutorial misconduct in both his summation in chief and rebuttal argument to the jury.

"This is a sticky wicket. Reading our case law, intermediate and ultimate, some citation can usually be found to support whatever position is urged by either party.

"It is apparent from the record that in this case the prosecution called the defendant's testimony into question in terms that were less than delicate. There is often little room in a murder trial for delicacy and semantic nuance.

\* \* \*

"Prosecutors are not permitted to state that on their 'solemn oaths' they believe the defendant guilty. Nor may they say that if the defendant were not guilty he would not be on trial.

"Defendants can be convicted only on proof beyond a reasonable doubt and not on the personal belief of the prosecutor. The trial court must so charge. But *prosecutors must in the words of the Campbell court[2] be allowed reasonable latitude in arguing inferences from*

[2] *Driscoll v People*, 47 Mich 413, 418; 11 NW 221 (1882).

*the facts on which they rely to establish guilt."* (Emphasis supplied.)

The statements by the prosecutor were fair comments based on the evidence presented.

The final issue defendant raises on appeal is whether the defendant is deprived of his US Const, Am XIV right to a fair trial where the trial court instructs the jury on the definition of "reasonable doubt" even though the defendant requests that no "reasonable doubt" definition be given. Defendant's argument is based on his belief that any attempt to define "reasonable doubt" entails the use of words and terms which in turn require definition if the jury is to be truly enlightened. We do not agree. The defendant has no right to prevent the judge from giving a proper "reasonable doubt" instruction.

The trial judge gave the following instruction:

"By stating that the prosecution must prove guilt beyond a reasonable doubt, I mean that there must be such evidence as causes you to have a firm conviction amounting to a moral certainty of the Defendant's guilt.

"If, aftering *[sic]* considering all of the evidence, you do not have such a certainty, then that is a reasonable doubt. A reasonable doubt is a state of mind which would cause you to hesitate to make an important decision in your life. It can arise from the evidence, the lack of evidence, or from the unsatisfactory nature of the evidence."

The trial court's instruction which defined reasonable doubt as a conviction to a moral certainty was proper. The Michigan Supreme Court in the early case of *People v Swartz,* 118 Mich 292, 300–301; 76 NW 491 (1898), upheld the reasonable doubt instruction which included the words "moral cer-

tainty". The instruction by the trial judge in the instant case was just and fair. Defendant's issue is without merit.

Affirmed.

M. F. CAVANAGH, J., concurs in result only.