# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACQUES JEAN KABONGO,

        Defendant-Appellant.

UNPUBLISHED
December 27, 2018

No. 338733
Wayne Circuit Court
LC No. 16-010745-01-FH

---

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of carrying a concealed weapon, MCL 750.227, for which he was sentenced to one year of probation. We affirm.

The jury convicted defendant of carrying a concealed weapon on October 15, 2016. On that date, defendant was working on a rental home he owned in Detroit. Two police officers observed defendant outside the house as they drove by. One of the officers, Alexander Collrin, saw that defendant had a semiautomatic handgun in a holster. Collrin notified his partner, Royer Hernandez, that defendant was armed. As Hernandez continued driving, he slowed down his vehicle and was able to see defendant in his rearview mirror. According to the officers, defendant walked to his truck, which was parked in the street, and opened the rear passenger door on the driver's side of the vehicle to remove some tools. At that point, both officers saw that defendant had covered the handgun with his shirt, concealing it from view. The officers approached defendant and asked him if he had a concealed-weapons license. Defendant had a license, but it had expired. The officers then placed defendant under arrest for carrying a concealed weapon.

The police allowed one of defendant's coworkers to drive defendant's truck home after defendant was arrested. According to the coworker, there were tools on the floor of the passenger side of the truck. Defendant testified that he knew how to properly openly carry his firearm. According to defendant, when the officers stopped him, he was on his front lawn, not in the street, and he only obtained tools from the curbside, front-passenger area of his truck. Defendant denied that he ever entered the street to walk to the driver's side of the truck. He also denied that he had any reason to cover up his weapon because he knew that he was allowed to openly carry it.

-1-

## I. CHALLENGES FOR CAUSE

Defendant argues that the trial court erred by refusing to dismiss both Juror No. 5 and Juror No. 14 for cause. Whether to excuse a potential juror for cause is generally left to the trial court's discretion. *People v Eccles*, 260 Mich App 379, 382-383; 677 NW2d 76 (2004). However, to the extent this issue involves the trial court's interpretation or application of a court rule or statute, it is reviewed de novo as a question of law. *Id*. at 382.

### A. JUROR NO. 14

When the jurors were asked about their views of persons who openly carry firearms, Juror No. 14 stated that she had an issue with anyone who openly displayed a gun, regardless of the circumstances or whether it was legal. She agreed, however, that despite her feelings on the subject, she would be able to set aside her personal opinion and follow the law. Defendant argues that the trial court erred by refusing to dismiss Juror No. 14 for cause in light of her views against persons openly carrying firearms.

MCR 6.412(D)(1) provides that "[a] prospective juror is subject to challenge for cause on any ground set forth in MCR 2.511(D) or for any other reason recognized by law." MCR 2.511(D) provides:

> **(D) Challenges for Cause.** The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:
>
> * * *
>
> (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;
>
> (4) has opinions or conscientious scruples that would improperly influence the person's verdict . . . .

Defendant also relies on MCL 768.10, which provides:

> The previous formation or expression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or impression not being positive in its character, or not being based on personal knowledge of the facts in the case, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action: Provided, That the person proposed as a juror, who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath, that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial:

Provided further, That the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror.

The trial court did not abuse its discretion by ruling that Juror No. 14 was not disqualified for cause. Juror No. 14 explained that her personal opinion was that people should not openly carry weapons, but she also stated, "[i]t's my feeling but I'll uphold the law so I'll set it aside." When asked if she could guarantee that, she responded, "Yeah. I will do my best to set that aside." She was asked to repeat that statement and said, "Yes, put it aside but they're still my feelings."

Despite Juror No. 14's belief that people should not be allowed to openly carry weapons, because she agreed that she would follow the law and would set aside her opinions and feelings about openly carrying firearms, the trial court was not obligated to dismiss her for cause under MCR 2.511(D)(3) or (4). Further, in light of her assurances that she could render an impartial verdict, the trial court's denial of defendant's challenge for cause did not violate MCL 768.10.

## A. JUROR NO. 5

Defendant argues that Juror No. 5 should have been dismissed for cause because she was a convicted felon. During voir dire, Juror No. 5 stated that she had previously been convicted of a felony, but then explained that it involved a matter in Illinois that occurred more than 25 years earlier, when she was a teenager. During further questioning, she admitted that she was uncertain of the status of the matter and did not know whether the conviction may have been expunged or removed from her record because of her youth. Because of the uncertainty, the trial court instructed an officer to conduct a criminal history check of Juror No. 5. The investigation did not reveal any criminal record in Michigan or another state.

Pursuant to MCR 2.511(D)(1), a potential juror may be challenged for cause if the individual "is not qualified to be a juror[.]" MCL 600.1307a(1)(e) provides that a person is qualified to serve as a juror if, along with the other listed requirements, he or she has not "been convicted of a felony." Although defendant correctly argues that a felony conviction would have disqualified Juror No. 5 from serving as a juror, the record does not establish that Juror No. 5 had a disqualifying felony conviction. Subsequent questioning revealed that Juror No. 5 was uncertain about the status of her prior criminal matter, which she stated occurred many years earlier when she was a teenager. The court observed that Juror No. 5 may have been treated as a juvenile offender, given that she was a teenager when she was in the judicial system in Illinois. MCL 600.1307a(1)(e) requires that one be "convicted" of a "felony" to be disqualified as a juror. The statute does not address juvenile adjudications. Because a juvenile adjudication is different from a conviction, it would not have required dismissal under the plain language of MCL 600.1307a(1)(e). See *People v Valentin*, 457 Mich 1, 5; 577 NW2d 73 (1998) ("If the language used is clear, the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written.") Similarly, if Juror No. 5's prior conviction was expunged, she would not have been disqualified from serving on the jury. In general, expunged convictions are not treated as convictions of record. See, generally, *Carr v Midland Co Concealed Weapons Licensing Bd*, 259 Mich App 428, 429-430; 674 NW2d 709 (2003). Because of the uncertainty about Juror No. 5's criminal status, the trial court instructed an officer to investigate the juror's

criminal record. That investigation did not disclose any record of a felony conviction, in Michigan or another state. Although Juror No. 5 also admitted to having been excused from serving on a previous jury, the reasons for that dismissal were not placed on the record.

In sum, because Juror No. 5 was uncertain about the status of her prior criminal matter, and a criminal record check failed to reveal any record of a disqualifying felony conviction for Juror No. 5, the trial court had a factual basis for concluding that Juror No. 5 was not disqualified from serving as a juror in this case. Accordingly, defendant has not shown that the trial court erred by failing to dismiss Juror No. 5 for cause.

## II. PEREMPTORY CHALLENGES

Defendant next argues that the trial court erred by overruling his objections to the prosecutor's use of peremptory challenges to excuse Juror Nos. 2, 3, and 14, and by disallowing his use of a peremptory challenge to excuse Juror No. 5. Defendant argues that the trial court erred by rejecting his claims that the prosecutor engaged in purposeful discrimination by using peremptory challenges to excuse African-American jurors, and by finding that his use of a peremptory challenge to excuse a Caucasian juror was racially motivated. We disagree.

## A. PROSECUTOR'S USE OF PEREMPTORY CHALLENGES

Defendant first challenges the prosecution's use of peremptory challenges to excuse Juror Nos. 2, 3, and 14, all of whom were African-American, like defendant. At trial, the trial court overruled defendant's objections to the dismissal of these jurors, finding that the record did not support defendant's claim that the prosecutor excused the jurors because of their race.

Pursuant to *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986), it is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution for a prosecutor to use a peremptory challenge to remove a prospective juror solely because of the juror's race. *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014); see also MCR 2.511(F)(1) (barring discrimination on various grounds during voir dire).

> Under the first step of a *Batson* challenge, a defendant must make a prima facie showing that . . . he or she is a member of a particular racial group, . . . the prosecution used a peremptory challenge to exclude from the jury a member of that racial group, and . . . the circumstances raise an inference that the challenge was race based. *Batson*, 476 US at 96. [*People v Tennille*, 315 Mich App 51, 61; 888 NW2d 278 (2016).]

The prosecutor does not appear to be contesting that the three parts of this initial step of a *Batson* challenge were satisfied. Accordingly, this issue concerns the second and third steps of a *Batson* challenge, which this Court summarized in *Tennille*, 315 Mich App at 61-62, as follows:

> An appellate court reviews de novo *Batson*'s second step, which centers on whether the prosecutor set forth a race-neutral explanation for the strikes. *People v Knight*, 473 Mich 324, 343; 701 NW2d 715 (2005). The third step in the *Batson* analysis requires the trial court to determine whether the challenger has sustained

his or her burden of demonstrating a racial motivation for the challenged peremptory strikes. This constitutes a question of fact reviewed for clear error. *Id*. at 344. This standard of review derives from *Hernandez v New York*, 500 US 352, 364; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (plurality opinion), in which the United States Supreme Court explained that *Batson* treated "intent to discriminate as a pure issue of fact, subject to review under a deferential standard[.]"

The prosecutor explained that she excused Juror No. 2 because it appeared she might have memory issues. The prosecutor's reasons for excusing Juror No. 2 were unrelated to the juror's race, and the record, specifically Juror No. 2's inability to recall the timing and specifics of events, reveals factual support for the prosecutor's race-neutral concern. The trial court agreed that Juror No. 2 "did indeed have a difficult time with memory [and] she did discuss senior moments." Because the record contains factual support for the prosecutor's race-neutral concerns,[1] and giving deference to the trial court's superior opportunity to observe Juror No. 2's demeanor at trial, we find no clear error with the trial court's finding that the prosecutor's reasons for excusing Juror No. 2 were not racially motivated.

The prosecutor explained that she excused Juror No. 3 because of her demeanor, which indicated that she did not want to be present for this trial. According to the prosecutor, Juror No. 3 refused to interact with the prosecutor and did not appear attentive. The prosecutor also referred to Juror No. 3's excuses and medical complaints as reasons why she did not want Juror No. 3 on the jury. The trial court agreed that the prosecutor's reasons were supported by the record. The court commented on Juror No. 3's demeanor, which included rolling her eyes, crossing her arms, and being one of the first ones to offer reasons for why she could not serve. The court found that the prosecutor provided race-neutral reasons for excusing Juror No. 3, and that the prosecutor was not racially motivated.

In light of the trial court's observations of Juror No. 3's demeanor, which we accord deference, defendant has not shown that the trial court's ruling with regard to Juror No. 3 was erroneous. In addition, the record supports the prosecutor's explanation that Juror No. 3 was quick to offer excuses for why she did not want to serve as a juror. Even if those excuses did not rise to a level justifying dismissal for cause, it was not improper for the prosecutor to consider them in assessing whether the juror was likely to remain attentive during trial. Defendant has not shown that the trial court clearly erred by finding that the prosecutor's reasons for excusing Juror No. 3 were not racially motivated.

The prosecutor explained that she excused Juror No. 14 because the juror was obviously quite pregnant and her conduct demonstrated that she was in pain. The prosecutor was concerned that her pain might affect her ability to sit throughout a trial. These reasons are race-neutral and are supported by the record. The trial court agreed that the juror was obviously

---

[1] The prosecutor appears to have erred by stating that Juror No. 2 could not remember a question about her occupation, but the gist of the prosecutor's concern about Juror No. 2 was memory, and the trial court did not clearly err by finding that this concern was supported by the record.

pregnant and, although the juror had stated during questioning that she was presently okay, she stated that her pregnancy sometimes caused her pain and she had seen her doctor the day before because of pain, and the trial court had observed her during trial holding her head in her hand. The juror's pregnancy and apparent physical condition were race-neutral reasons for excusing her from the jury. Defendant has not shown that the trial court clearly erred by finding that the prosecutor's use of a peremptory challenge to excuse Juror No. 14 was not racially motivated.

B.  DEFENDANT'S USE OF A PEREMPTORY CHALLENGE TO EXCUSE JUROR NO. 5

Defendant argues that the trial court erred when it did not allow him to remove Juror No. 5 from the jury because of its ruling that defendant's use of a peremptory challenge to excuse Juror No. 5, who was Caucasian, was based on race. See, generally, *People v Bell*, 473 Mich 275, 287-288; 702 NW2d 128, amended on rehearing 474 Mich 1201 (2005) (discussing a defense attorney's use of peremptory challenges to dismiss jurors of a particular race).

The prosecutor objected to defendant's use of a peremptory challenge to excuse Juror No. 5, noting that defendant had previously peremptorily excused two other jurors, both of whom were also Caucasian. Defense counsel offered the following reasons for wanting to excuse Juror No. 5: she came from a family with a background in law enforcement; counsel had "feelings" from the juror's exchange of words, which counsel "felt were unfriendly, somewhat antagonistic;" and the juror "didn't really recall things so maybe she has a real problem remembering." When the trial court questioned the bases for or accuracy of defense counsel's reasons, counsel added that he thought Juror No. 5 was lying because she had stated that she had a prior felony conviction, but no record of a conviction was found when her criminal history was investigated. After analyzing defense counsel's reasons in light of the record, the trial court rejected those reasons and found that the prosecutor "has established purposeful discrimination." Accordingly, it allowed Juror No. 5 to remain on the jury.

Although defense counsel's articulated reasons for excusing Juror No. 5 were race-neutral, the trial court was still required to determine whether those reasons were persuasive and credible. See, generally, *Tennille*, 315 Mich App at 73. This required the court to assess the plausibility of the race-neutral explanation in light of all evidence with a bearing on it. *Id.* With respect to defense counsel's explanation that Juror No. 5 belonged to a family with a background in law enforcement, the court observed that the juror had expressed, during questioning by the court, that her family background would not prevent her from treating a police officer's testimony the same as any other witness, and that defense counsel had not further questioned the juror during voir dire about her relationships with police officers. Given the juror's response and defense counsel's failure to pursue that subject during voir dire, and given the dubious reasoning *as a whole* as offered by defense counsel and as discussed below, the trial court did not clearly err by rejecting the sincerity of this proffered reason.

Regarding defense counsel's claim that Juror No. 5 "didn't really recall things so maybe she has a real problem remembering," counsel did not identify anything specific that the juror had difficulty comprehending or remembering, and the trial court indicated that it did not recall her stating that she could not remember anything. Given the lack of objective support for this concern, the trial court did not clearly err by finding that it was not a credible concern.

Defense counsel also referred to general feelings about Juror No. 5, explaining that he thought the exchange of words with the juror was unfriendly and antagonistic. Defense counsel did not identify any specific basis for his unspecified feelings, and the trial court stated that it was required to "probe more deeply when someone just talks about feelings." The court found that the record lacked "any objective indicia of concern[.]"[2] Indeed, the record discloses that Juror No. 5 stated that she respected the rights of gun owners to openly carry their weapons, and thus she harbored no apparent bias to defendant's position. She stated, "being a police officer's daughter it's not going to concern me unless the gun is raised." When asked about her ability to serve on a jury composed of African-Americans, Juror No. 5 explained that she works in a diverse environment, meets people of all cultures, and enjoys getting to know them. She indicated that she could be fair. There are no objective indicia that Juror No. 5 harbored any unfriendly views antagonistic to defendant's case or theory of defense, or against defendant because of his race. In light of the juror's responses and defense counsel's failure to articulate any specific basis for his feelings that Juror No. 5 appeared unfriendly or antagonistic, the trial court did not clearly err by rejecting this explanation as unpersuasive or not credible.

Defense counsel also offered the explanation that he thought Juror No. 5 was lying because she had said that she had a prior felony conviction, but a criminal record check did not reveal any criminal history. However, Juror No. 5 also stated that her criminal matter had occurred many years earlier, when she was a teenager, and she acknowledged that she was uncertain about the status of the matter. The trial court found that the juror was trying to be honest with the court about her past. Considering that the record does not indicate that Juror No. 5 was trying to intentionally deceive the court, defendant has not demonstrated that the trial court clearly erred by finding that this explanation was not believable.

In sum, although defense counsel articulated reasons for wanting to excuse Juror No. 5 that were race-neutral, the trial court did not clearly err by finding that counsel's attempt to excuse Juror No. 5 by peremptory challenge was motivated by race. We acknowledge that a different court might have reached a different result, but we are to give deference to the trial court's factual findings. We cannot find clear error on the existing record, given the implausibility of so much of defense counsel's proffered explanations.

### III. MOTION FOR A MISTRIAL

Next, defendant argues that the trial court erred by denying his motion for a mistrial. We review a trial court's decision whether to grant a mistrial for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009).

In a pretrial ruling, the court barred both police officers from mentioning at trial that they were part of a special operations unit and were investigating a marijuana-grow operation when they encountered defendant. During Hernandez's testimony, the prosecutor asked him about his assignment with the Detroit Police Department and he responded that he worked with "30-

---

[2] This differs from the situation with Juror No. 3, who rolled her eyes and crossed her arms.

Series" at the Second Precinct. The prosecutor asked him "[w]hat is 30-Series" and he explained, "We, basically, we go for known offenders. We deal with drugs, guns, anything that comes with violent crimes." When Collrin testified, he mentioned that when they observed defendant, they were on their way to "the narcotics location that I had a complaint on." Defendant moved for a mistrial, arguing that both officers violated the trial court's pretrial order.

Not every inappropriate comment before a jury warrants a mistrial. *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). "A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *Waclawski*, 286 Mich App at 708 (quotation marks and citation omitted); see also *People v Bauder*, 269 Mich App 174, 195; 712 NW2d 506 (2005), rejected in part on other grounds as discussed in *People v Burns*, 494 Mich 104, 112-113; 832 NW2d 738 (2013).

In this case, although Hernandez stated that he works on cases involving drugs, guns, and violent offenders, it was clear in Hernandez's explanation of his duties that he was only referring to his job duties, not anything directly related to defendant. Similarly, when Collrin testified that he and Hernandez saw defendant in the course of investigating a narcotics complaint, there was no suggestion that the complaint was linked to defendant. It was clear from the officers' overall testimony that they essentially stumbled upon defendant while responding to an unrelated matter. There was no suggestion that defendant was a subject of the matter the police were investigating. Indeed, the prosecutor asked Hernandez if there was anything illegal going on with defendant other than the fact that his gun was no longer visible, and Hernandez confirmed that there was no other illegal activity.

To the extent that some of the officers' testimony may have exceeded the bounds of the trial court's pretrial order, defendant was not prejudiced by the limited responses because there was no suggestion that defendant was a subject of the matter the officers were investigating and, overall, the jury was informed that the officers were not targeting defendant and that defendant was not involved in any illegal activity other than the concealment of a weapon. Indeed, Collrin testified that he felt bad about having to arrest defendant under the circumstances and that defendant was very cooperative. Because any irregularity did not impair defendant's ability to receive a fair trial, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

## IV. JURY INSTRUCTIONS

During trial, defense counsel referred to Hernandez's and Collrin's police reports to impeach portions of their trial testimony. Defendant now argues that the trial court erred when, in response to a jury note asking to view the police reports, it advised the jury that the reports had not been admitted into evidence.

MCR 2.513(N)(1) provides that, "[a]fter jury deliberations begin, the court may give additional instructions that are appropriate." In *People v Craft*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337754); slip op at 3, this Court addressed a trial court's supplemental instructions after a jury begins deliberations, and observed that two different standards of review apply, depending on the substance of the argument raised:

We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. [Quotation marks and citations omitted.]

In the case at bar, the abuse-of-discretion standard applies to the question whether the trial court properly responded to the jury's request. See *People v Darwell*, 82 Mich App 652, 663; 267 NW2d 472 (1978).

The jury's note requested that the court provide the jury with copies of the police reports. Although the officers were questioned about their police reports, because the reports were never admitted into evidence, it was not appropriate to provide them to the jury. MCR 2.513(O) provides:

> The court shall permit the jurors, on retiring to deliberate, to take into the jury room their notes and final instructions. *The court may permit the jurors to take into the jury room* the reference document, if one has been prepared, *as well as any exhibits and writings admitted into evidence*. [Emphasis added.]

Although MCR 2.513(O) gives a court discretion to provide a deliberating jury with any exhibits or writings *admitted into evidence*, because the police reports were never admitted as evidence, the court did not abuse its discretion by not providing them. The court also did not abuse its discretion by the manner in which it responded to the jury's question. The court simply explained that it was not providing the police reports because they were not admitted into evidence. The instruction directly responded to the jury's request.

Defendant argues that the court's instruction misled the jury into believing that the police reports could not be considered in evaluating the police officers' testimony. However, the court merely instructed that the police reports had not been admitted into evidence. The instruction did not foreclose the jury from relying on the officers' testimony about their reports in evaluating the credibility of their testimony. Accordingly, there was no error.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his conviction. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court must view the evidence in the light most favorable to the prosecution. *Id*. at 515. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005).

Carrying a concealed weapon is a general intent crime and the offense requires, as applied to this case, knowingly carrying a weapon concealed on one's person. *People v Combs*, 160 Mich App 666, 673; 408 NW2d 420 (1987); *People v Davenport*, 89 Mich App 678, 682; 282 NW2d 179 (1979).

Collrin testified that when he initially saw defendant, he could see that defendant was armed with a handgun that was in a holster. He saw the weapon as defendant was walking down a driveway, toward the street. As both officers continued to watch defendant, he went into the street to his four-door truck, opened a door, and took out some tools. Hernandez described seeing defendant cover his weapon with his shirt. Hernandez admitted that if defendant was on the passenger side of the truck, along the curb, he would not have been able to see defendant cover his weapon. At that angle, the truck would have prevented the officers from observing defendant cover the weapon. However, both officers testified that defendant was on the driver's side of the truck, which was in the street, when he covered his weapon. This testimony was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly carried a weapon that was concealed on his person. It was undisputed that defendant did not have a valid license to carry a concealed weapon.

Defendant argues that the officers' testimony was inconsistent with their police reports, which suggested that defendant entered his truck from the passenger side, which was along the curb. Defendant also points out that the coworker who drove defendant's truck after defendant was arrested testified that there were tools on the floor of the passenger side of the truck. Defendant similarly testified that the tools were in the front passenger area. It was up to the jury to determine whether this evidence affected the credibility of the officers' testimony. In reviewing a challenge to the sufficiency of the evidence, this Court "will not interfere with the trier of fact's role of determining the . . . credibility of witnesses." *Williams*, 268 Mich App at 419. Rather, "any conflict in the evidence must be resolved in the prosecutor's favor." *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011) (quotation marks and citation omitted). Therefore, we reject this claim of error.

## VI. PROSECUTOR'S CONDUCT

In his final issue, defendant argues that a new trial is required because the prosecutor misled the jury about the nature of an exhibit and then failed to preserve the exhibit. An unpreserved issue of prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). A prosecutor is afforded great latitude during closing argument; the prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *Bahoda*, 448 Mich at 282.

During the testimony of Hernandez and Collrin, defense counsel made drawings on a whiteboard to establish where defendant's truck was parked and where the officers were when they observed defendant cover his handgun. Only a copy of the drawing made during Collrin's testimony was preserved with a photograph, which was admitted as Court Exhibit C without objection. The prosecutor commented on the drawings, including Exhibit C, during closing argument.

Defendant now argues that the prosecutor misled the jury regarding Exhibit C because the prosecutor referred to the whiteboard drawings in her closing argument, but did not clarify that Exhibit C represented only the drawing made during Collrin's testimony. There is no merit to this argument. Although the prosecutor discussed both drawings in her closing arguments, she accurately informed the jury that "you're going to get a copy of at least the drawing after Officer Collrin testified so you can refer to that." Similarly, the trial court accurately informed the jury that Exhibit C "was a [screenshot] of the whiteboard taken after Officer Collrin's testimony." Thus, it was made clear to the jury that it was being provided with a photographic exhibit of only the drawing made when Collrin testified. Accordingly, there was no error, plain or otherwise.

Defendant also asserts that he could not obtain a copy of Exhibit C from the prosecutor, and he accuses the prosecutor of failing to preserve the exhibit. According to the record, however, Exhibit C was admitted as a court exhibit. After the jury returned its verdict, the court stated on the record that "[t]he Court will, of course, retain Court Exhibit A, Court Exhibit B and Court Exhibit C." Defendant is represented on appeal by the same attorney who represented him at trial. Defendant does not indicate that he attempted to obtain a copy of Exhibit C from the trial court, but was unable to do so. Regardless, the content of Exhibit C is not at issue. Defendant is only challenging whether the prosecutor accurately referenced the exhibit in her closing argument. As explained above, there is no merit to defendant's argument that the prosecutor misled the jury regarding what Exhibit C represented.

Affirmed.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher